THE STATE ex inf. ELLIOTT W. MAJOR, Attor-
ney-General, v. W. K. AMICK.

In Banc, December 31, 1912.

1. CIRCUIT JUDGE: Vacancy: Statutes in Pari Materia. The
Act of 1889 creating Division No. 2 of the circuit court of
Buchanan county, and authorizing the Governor to appoint a
judge of said division, "who shall continue in office until January
1, 1891, and . . . at the general election to be held in Novem-
ber, 1890, and at the general election to be held every six years
thereafter, the additional circuit judge provided for in this
act shall be elected," and Sec. 3896, R. S. 1909, providing that
"if the office of the judge of any court of record of this State
shall become vacant from death, resignation, or from any other
cause, such vacancy shall be filled by the appointment of the

State ex inf. v. Amick.

Governor until the next general election held after such vacancy occurs, when the same shall be filled by election for the residue of the unexpired term," are *in pari materia*, and supplement each other, and when read together, as they must be, they mean that where a vacancy occurred in said division of the circuit court of Buchanan county in January, 1911, the judge appointed by the Governor to fill said vacancy held to the general election in November, 1912, and his successor elected at that time immediately upon qualification was entitled to the office. [Overruling State ex inf. v. Dabbs, 182 Mo. 359.]

2. ————: ————: ————: Made Part of General Law by Act Itself. Section 3 of the Act of 1889, declaring that all laws now in force relating to the circuit court of Buchanan county "not inconsistent with the provisions of this act, shall continue in force and apply to the two divisions of said court," was enacted for the very purpose of securing uniformity of qualifications and elections of judges of both divisions of said court, as well as in the mode of filling vacancies in either, by making applicable thereto the general laws relating to circuit courts.

3. ————: ————: Constitutionality of Act. The section of the Constitution declaring that "in case the office of judge of any court of record becomes vacant by death, resignation, removal, failure to qualify, or otherwise, such vacancy shall be filled in the manner prescribed by law," not only authorized the Legislature to empower the Governor to fill a vacancy in the office of a circuit judge, but also authorized it, after so providing and after a vacancy has been filled in that manner, to further provide for ending the tenure of the Governor's appointee and for filling the remainder of the unexpired term by an election, as was done by Sec. 3896, R. S. 1909.

4. ————: ————: Sec. 3896: Exception to General Statute: Sec. 5828. Sec. 5828, R. S. 1909, declaring that appointees of the Governor appointed to fill vacancies shall hold office until the first Monday of January next after the general election at which their successors are elected, and section 3896, declaring that the person appointed to fill a vacancy in the office of judge of a court of record shall hold until the next general election, at which time a successor shall be elected for the residue of the term, were enacted at the same term of the Legislature in 1879, are *in pari materia*, are to be read together as parts of a rounded whole, and both can stand. The first is general, and standing alone would apply to any vacancy in any office; the other is an exception thereto, and applies only to courts of record.

## Quo Warranto.

WRIT ALLOWED.

*Elliott W. Major,* Attorney-General, for informant; *R. E. Culver,* of counsel.

(1)   Respondent's position that the election of his successor, Charles H. Mayer, was a nullity, is untenable.   The case of State ex inf. v. Dabbs, 182 Mo. 359, is not in point here.   (2)   We also understand respondent to contend that he is entitled to hold said office until the first Monday in January, 1913, by virtue of sec. 5828, R. S. 1909.   This general provision of the statute was enacted in 1879 (sec. 5527, R. S. 1879) at the same session of the Legislature at which section 3896 was enacted.   There is no conflict between these sections.   Both may be read together with full force and effect.   Both were passed by the same Legislature, at the same session, and, if read together, they will be found perfectly consistent and each will be found to have a proper purpose.   The rule of construction in this State has always been that where there is a general provision which might include some particular subject it will be held to include it, unless there is an act which applies to the particular subject, in which case the act applying to the particular subject will be treated as an exception to the general act.   State ex inf. v. Burkhead, 187 Mo. 14; State ex rel. v. Perkins, 139 Mo. 106; Mayes v. Palmer, 206 Mo. 296.   (3) The closing paragraph of sec. 1 of the Act of 1889 reads as follows:.   "The judges of such circuit court shall enter upon the performance of their duties on the first Monday in January next ensuing their election," and it is upon this that the respondent bases his claim to hold his office until January 1, 1913.   This clause of the act can refer only to the judges elected for the regular term of six years, because no other judges were provided for in said act.   Indeed, the language in no way changed the law as it then existed, for sec. 3313, R. S. 1889, in force at the time and still

in force, provides that all judges of the circuit court should take their offices "on the first Monday in January next ensuing their election." State ex rel. v. Perkins, 139 Mo. 106; Mayes v. Palmer, 206 Mo. 296.

*W. K. Amick pro se.*

(1) The election of a successor to respondent was without authority of law, and is a nullity. State ex inf. v. Dabbs, 182 Mo. 359; Laws 1889, sec. 1, p. 74. (2) Under the Constitution, sec. 2, art. 5, the Governor had the authority to appoint respondent to fill the vacancy created by the resignation of L. J. Eastin, and the person so appointed held to the end of the term in which the vacancy occurred. State ex inf. v. Herring, 208 Mo. 708. (3) Sec. 3896, R. S. 1909, is unconstitutional, and is not authority in this case. Sec. 32, art. 6, Constituition. While the provision of the Constitution allows the Legislature to fill the vacancy, it does not allow the Legislature to provide for filling the vacancy and then provide further for ending of the term of the person chosen to fill the vacancy, and then again fill the vacancy by another method. When the vacancy is once filled, then the power of the Legislature is at an end. The vacancy may be filled either by election, or be filled by appointment, but it cannot be filled by appointment and then afterwards a vacancy created and filled by election. The statute says "such vacancy shall be filled by appointment of the Governor." This language exhausts the power of the Legislature to again make the office vacant and refill it, if it has already been filled. After providing that the Governor shall fill the vacancy for a certain length of time, the statute then provides that the vacancy shall be filled by election. This last part of the statute is mere surplusage, and void, for the reason that the vacancy has already been filled by appointment, and the Legislature has no power to create

another vacancy in the same office to afterwards be filled by election. (4) The term of any circuit judge extends beyond the term for which he was appointed or elected, and continues until his successor has been elected and qualifies.    Sec. 3843, R. S. 1909.    (5) Judges of division number two of the Buchanan Circuit Court take their seat on the first Monday in January next ensuing their election.    As the act creating division number two of the Buchanan Circuit Court is a special act, it would control as to the time when the judge would take his seat.    The language of the act is as follows: "All judges of said circuit shall enter upon the performance of their duties on the first Monday in January next ensuing their election."

WOODSON, J.—This is an original proceeding by *quo warranto,* instituted in this court, by the Attorney-General, against the respondent, William K. Amick, to show by what authority he holds the office and performs the duties of Judge of Division Number Two of the circuit court of Buchanan county, the same being the sixth circuit.

The writ was duly issued and respondent has entered his appearance, and, in order to secure a speedy determination of the case, has filed his return, and consents that the case may, by the court, be taken up and disposed of upon the briefs filed by the respective parties.

The facts of the case are undisputed, as appears from the petition for the writ filed by the Attorney-General, and the return thereto made and filed by the respondent, and are substantially and briefly set forth in the statement of the case made by the relator, which is as follows:

"The respondent has filed his return, in which he alleges that he is exercising the powers of said office, and claims to be the duly appointed, qualified and acting judge of Division No. 2 of said court.    In support

of this contention, the return recites the passage and approval of an act of the General Assembly of this State, approved April 13, 1889, found at pages 73, 74 and 75 of the Laws of 1889, which act creates another division of the circuit court in the 12th judicial circuit, said new division to be known as Division Number Two.

"The return further sets out that the number of said twelfth judicial circuit was thereafter changed to the sixth judicial circuit; that at the election held in November, 1890, and at the regular elections thereafter held in November of the years 1896, 1902 and 1908, the judge of said Division Number Two of said court was elected according to the terms and provisions of said act of April 13, 1889; that at the regular election so held in November, 1908, one Lucien J. Eastin, who then possessed all the necessary qualifications, was duly and regularly elected judge of said Division Number Two of said court; that he duly qualified and exercised the duties of said office to the third day of January, 1911, on which day he resigned his said office, and the respondent, who possessed the necessary qualifications for said office, was appointed by the Governor of this State to fill said vacancy, and thereafter qualified, and since the date of his qualification, to-wit, the 7th day of January, 1911, has been and is now the duly appointed, qualified and acting judge of said Division Number Two of said court, and that by reason of said facts so alleged he is entitled to hold and exercise the duties of said office until the regular election to be held in November, 1914.

"The respondent further alleges in the return that Charles H. Mayer possesses all the qualifications prescribed by law for said office and was duly elected judge of said Division Number Two of said court at the general election held on November 5, 1912; that he received the highest number of votes cast for any person for said office at said election, and that on the

State ex inf. v. Amick.

18th day of November, 1912, the Governor of this State duly issued and delivered to said Charles H. Mayer a commission as judge of said Division Number Two 'of said court, and that thereafter, on the 30th day of November, 1912, the said Mayer duly took the oath of office and qualified as required by law.

"The respondent further answers that he believes and alleges that the said election so held 'was a nullity and void because no election for judge of the circuit court, Division Number Two of the sixth judicial circuit could have been held at said time under the law creating said office,' and concludes his return by requesting the court to speedily hear and determine whether he, the respondent, or the said Charles H. Mayer, is lawfully entitled to said office.

"Upon the filing of this return the Attorney-General filed his motion for judgment on the pleadings."

I. Respondent does not state his contentions, but leaves the court to infer what they are from reading certain statutes cited in the case of State ex inf. v. Dabbs, 182 Mo. 359, referred to in connection therewith. Such a presentation of a case is extremely unsatisfactory to the writer, for the reason that he is always in doubt as to whether his ideas of the case meet with the views of counsel presenting the same. They may have one theory of the case, and the court may have another, and when the latter expresses its views of the case, they may be wide of those entertained by counsel; and were it not for the pressing necessity of a speedy determination of the case, we would feel inclined to seek more light upon that subject, but under the conditions and circumstances surrounding the case, and the parties thereto, we deem it advisable to proceed with the case in the light cast before us.

The statutes cited and relied upon by respondent read as follows:

"Section 1. From and after the approval of this act, the twelfth judicial circuit, now comprising the counties of Buchanan and DeKalb, shall consist of the county of Buchanan, and be composed of two divisions and two judges. Each of said judges shall separately try causes and perform all the duties and exercise all the powers imposed upon and given to circuit judges. The divisions of said circuit shall be numbered, 'Circuit Court Division Number One,' and 'Circuit Court Division Number Two.' The circuit judge of the twelfth judicial circuit as now composed shall continue in office until the expiration of the term for which he was elected, and shall preside over circuit court Division Number One. Upon the taking effect of this act the Governor shall appoint an additional circuit judge, who shall preside over circuit court Division Number Two, and who shall continue in office until January 1, 1891, and receive the same salary now paid to the judge of the twelfth judicial circuit, and to be paid in the same manner. At the general election to be held in November, 1890, and at the general election to be held every six years thereafter, the additional circuit judge provided for in this act shall be elected. All judges of said circuit shall enter upon the performance of their duties on the first Monday in January next ensuing their election." [Laws 1889, p. 74.]

The respondent's view of that statute is expressed in this language:

"There is but one case in this State, that respondent can find, that is directly in point on this question, and that is the case of State ex inf. v. Dabbs, 182 Mo. 359."

Proceeding he says:

"In the Dabbs case, a circuit court Division Number Two, was created in Jasper county by special act in 1901. A vacancy then existing, the Governor appointed Mr. Dabbs as judge of the Division Number

Two. Dabbs's term, under his appointment, expired the last day of December, 1902, and at the November election, 1902, a successor was elected to succeed Dabbs, but died after the election and before the time to take his seat. Dabbs continued to hold the office after the expiration of his term, and a proceeding was brought to oust him. In the return of Dabbs, it was contended that no successor could be elected at any general election except at the election held on the date specified in the act creating the office. The language of the court in deciding this question is as follows:

" 'By the Act of March 25, 1901, it is provided that "upon the taking effect of this act, the Governor shall appoint an additional judge for said court," and it then provides for the election of a successor at the general election in November, 1902, and every six years thereafter, but it nowhere provides for an election for this office at any other time. A failure to elect at the time fixed by the, statute, or the failure of the person chosen to qualify, will not, we think, authorize the holding of an election at any other time than that fixed by the act of the Legislature.'

"Again the court says: 'As the Act of March 25, 1901, provided for the election of a judge of the circuit court of Jasper county at the general election in November, 1902, and every six years thereafter, there is no authority in the statute for holding an election for that office at any other time, and this is true although there may be a general election for other officers before that time. The statute is too plain for argument upon this question.' "

Continuing the respondent states:

"The language of the act creating Division Number Two in Jasper county under which the Dabbs case was decided, is as follows:

" 'At the general election to be held in November, 1902, and every six years thereafter, the addi-

tional circuit judge provided for in this act shall be elected.'

"The language of the act creating Division Number Two of the Buchanan circuit court is as follows:

" 'At the general election to be held in November, 1890, and at the general election to be held every six years thereafter, the additional circuit judge provided for in this act shall be elected.'

"The language of both acts is identically the same; and under the authority of the Dabbs case, supra, no election could be held to fill this vacancy, even though there were general elections intervening between the date of the vacancy and the end of the term prescribed by the act. By the terms of the act creating Division Number Two of the Buchanan Circuit Court, no election could be held for the office until November, 1914, and respondent is entitled to hold the office until the 31st day of December, 1914, provided a successor is elected at the November election, 1914.

"The Dabbs case was decided June 7, 1904, and there were general elections to be held in November, 1904 and 1906, but notwithstanding this, the court directed that Mr. Dabbs hold the office until the end of the year, 1908. If no election could be held to fill the vacancy in that case until the time specified in the act, then no election to fill the vacancy, in the case at bar, can be held until November, 1914, and therefore the election of Mr. Mayer in November, 1912, was a nullity."

Counsel for relator, as well as the court, is uncertain as to the position of respondent, as will appear from the reply to the brief of the latter: His "contention seems to be based upon the fact that the Act of April 13, 1889, the statute previously quoted, provides, first, for the appointment of a judge until the next general election, and then for the election of a judge each six years thereafter, from which re-

spondent contends that there can be no election except at the end of each six years; that is, respondent contends, as we understand his position, that he was appointed until his successor could be legally elected and qualified, and that until the end of the six year term, that is, November, 1914, there could be no legal election of a judge for said division of said circuit court; that inasmuch as his successor was not elected at the end of a six-year term said successor has not been legally elected."

By reading that statute it will be observed, that it only provides for the election of a judge to Division Number Two of the circuit court of Buchanan county, every six years, but does not provide for the filling of a vacancy therein, by election or otherwise. It is, therefore, perfectly clear, that when the Legislature provided for the election of a judge of said division, every six years, it had in mind and only referred to the regular judge who should be elected thereto every six years, and not to the election or the appointment of a judge to fill a vacancy therein, caused by death, resignation or otherwise.

At the time of and prior to the enactment of that statute, there was another statute providing the method for filling vacancies in all courts of record in the State, and fixing the term for which the judge appointed to fill the vancancy should hold; also providing the manner of electing his successor to fill the remainder of the unexpired term, and then requiring an election to be held for that purpose.

That statute is section 3896, Revised Statutes 1909, and reads as follows:

"Sec. 3896. If the office of the judge of any court of record of this State shall become vacant from death, resignation, or from any other cause, such vacancy shall be filled by the appointment of the Governor until the next general election held after such

vacancy occurs, when the same shall be filled by election for the residue of the unexpired term.''

This section was enacted in 1879 and has remained unchanged ever since. [See sec. 1631, R. S. 1899; sec. 3276, R. S. 1889; sec. 1070, R. S. 1879.]

This court must presume that when the Legislature enacted said Act of 1889 creating the second division of the circuit court of Buchanan county, it knew that in the course of ordinary human events there would be vacancies in said office, caused by death, resignation or otherwise, and inasmuch as that body made no provision therein for filling such vacancies, must have intended that they should be filled in the manner provided for by said section 3896, supra, for filling all vacancies occurring in all courts of record in the State.

The statute creating the second division of the circuit court of Buchanan county should not be read and construed alone, but should be read and interpreted in connection with and in the light of all statutes standing *in pari materia*. To do otherwise would, as stated by counsel for relator, ''obviate in this one division the necessity of the occupant possessing the qualifications prescribed by law for the judge of every division of every other circuit in the State, for this act prescribes no qualification for the judge who is to fill the office created; to so read the act would be to discard, as to this one judge, all of the limitations, restrictions and safeguards thrown about the conduct of the judges of every other circuit court, including Division Number One of the sixth judicial circuit, for this act prescribes no such limitations, restrictions and safeguards; to so read the act would be to apply one method of filling a vacancy in Division Number One of the circuit court of Buchanan county and all other courts of record in the State, and some other method of filling a vacancy in Division Number Two of said court. Even if the Legislature had in

this act attempted to provide a method for filling the vacancy in Division Number Two of said court (which it did not) in any respect different from the method of filling vacancies in all other courts of record in this State, it would have to be disregarded, because in conflict with section 52, article 4, of the Constitution, which prohibits the Legislature from enacting a local or special law where a general law may be applicable.'' [State v. Hill, 147 Mo. 63.]

In order to reach the conclusions just stated, as to the meaning of the Act of 1889, we are not confined to the ordinary rules of statutory construction, because section 3 of the same act expressly provides that, ''All laws now in force in relation to the twelfth judicial circuit [now the sixth judicial circuit] not inconsistent with the provisions of this act, shall continue in force and apply to the two divisions of said court.''

This section was evidently enacted for the very purpose of securing uniformity of qualification and election of judges to all divisions of the circuit court, as well as the mode of filling such vacancies as might occur therein.

If we view that section of the Act of 1889 creating the second division of the circuit court of Buchanan county, in the light of section 3 thereof, then it seems to me that there can be no room for reasonable doubt as to the meaning of the Legislature.

The omission from that act of a provision for filling vacancies in the division thereby created, and the Legislature knowing that a proper mode for filling vacancies in all courts of record existed, namely, that provided for in section 1070, Revised Statutes 1879, now section 3896, Revised Statutes 1909, heretofore copied, lead to the irresistible conclusion that the Legislature by enacting said section 3 intended thereby to apply the mode prescribed by said general stat-

ute to filling vacancies occurring in said division. In other words, section 3 of the Act of 1889 makes sections 1070 and 3896 apply to filling vacancies in the office of Division Number Two of the circuit court of Buchanan county, as fully and completely as if it had been re-enacted and incorporated into the Act of 1889 creating that division.

If we are correct in the premises, then the term of six years fixed by the Act of 1889, and the clause thereof providing that the judge of said division should hold office until the first of January following his election, apply only to the judge elected for the regular term of six years, and not to the judge appointed or elected to fill out a vacancy.

There is nothing in the case of State ex inf. v. Dabbs, 182 Mo. 359, that is in conflict with the foregoing observations.

The Act of March 25, 1901, creating the second division of the circuit court of Jasper county, authorized the Governor to appoint a judge to said office, and by the provisions thereof the appointee was to hold the office until the first Monday of January, 1903, and until his successor was elected and qualified; and "at the general election to be held in November, 1902, and every six years thereafter, the additional circuit judge provided for in this act shall be elected."

Shortly after that act went into effect, the Governor appointed Mr. Hugh Dabbs to the office of judge of the division number two of the circuit court of Jasper county, for a term expiring on the first Monday of January, 1903. At the general election held in November, 1902, Judge Dabbs' successor was duly elected, but two days after the election and prior to his qualification, he died.

In that act there was no provision for another election until six years later, and this court held in that case that section 3896 did not apply because there was no vacancy in the office, for the reason that Judge

Dabbs had been appointed under the Act of March 25, 1901, for a term expiring on the first Monday of January, 1903, and *until his successor was duly elected and qualified,* and his successor never having qualified, it was held that Judge Dabbs was entitled to hold the office six years longer.

Technically and probably literally speaking, that ruling was correct, but when we view our form of government, the history and traditions of our institutions, in the light of the spirit of our election laws, with the liberal provisions for filling vacancies in all offices, and especially section 32 of article 6 of the Constitution, hereinafter quoted, I seriously doubt the correctness of that ruling. But be that correct or incorrect, that case in no manner assists the respondent in the case at bar, for the obvious reason that here there was a vacancy. Judge Amick's term having fully expired, his successor, Judge Mayer, was duly elected and qualified some time prior to the institution of this proceeding.

And in this connection it should be borne in mind that Judge Amick was not appointed under the Act of 1889, creating the second division of the circuit court of Buchanan county (as Judge Dabbs was under the Act of 1901), but was appointed under and by authority of the general statutes, section 3896, Revised Statutes 1909, providing for filling all vacancies in all courts of record.

So wherever the respondent may turn, he must finally rest upon said section 3896, because it is the sole authority the Governor has for filling a vacancy in the office of judge of division number two of the circuit court of Buchanan county, or the vacancy in any other office of judge of a court of record, which was enacted in pursuance to the mandate of section 32 of article 6 of the Constitution, which reads as fol lows:

"In case the office of judge of any court of record becomes vacant by death, resignation, removal, failure to qualify, or otherwise, such vacancy shall be filled in the manner provided by law."

Respondent having received his appointment under the general law, he must yield it according to the same mandate.

Moreover, the return filed herein correctly admits that upon the acceptance of the resignation of Judge Eastin, the respondent's predecessor in office, by the Governor on January 3, 1911, a vacancy was thereby created in the office of judge of division number two of the circuit court of Buchanan county. Thereupon it became the duty of the Governor, under section 32 of article 6 of the Constitution, to fill that vacancy in the manner prescribed by section 3896, Revised Statutes, 1909, enacted in pursuance to said constitutional provision, and hereinbefore copied, until the next general election, which was to be held on November 5, 1912, at which time, it was therein further provided, the qualified electors of the circuit should elect a successor to the appointee, for the remainder of the unexpired term of Judge Eastin, which will expire on the first Monday in January, 1915.

That in performing said duty, the Governor did on or about January 3, 1910, appoint the respondent, William K. Amick, judge of said division, until November 5, 1912, and until his successor should be elected and qualified. Thereupon Judge Amick duly qualified and entered upon the discharge of the duties of said office; and thereafter he and Charles H. Mayer became candidates for election for the unexpired term of Judge Eastin, which will expire on the first Monday in January, 1915. That election, which was held November 5, 1912, as previously stated, resulted in the election of Mayer, and if we have correctly construed said constitutional provision and statutory enactments, of which we entertain no doubt, then it neces-

sarily follows that Mayer was legally elected on November 5, 1912, to fill the remainder of the unexpired term of Judge Eastin, which will expire on the first Monday in January, 1915, as before stated.

If we correctly understand respondent he does not seriously controvert the construction we have placed upon section 32 of article 6 of the Constitution and section 3896, Revised Statutes 1909, but devotes all of paragraph three of his brief to arguing that said section of the statute is violative of said section 32 of the Constitution. His position is this: That while said constitutional provision allows the Legislature to empower the Governor to fill a vacancy, yet it does not allow the Legislature after so providing, and after the vacancy has been filled in that manner, to further provide for ending the term of the person selected by the Governor, and again provide for filling the remainder of the unexpired term by an election, as was attempted to be done in the case at bar. That when the vacancy is once filled, then the power of the Legislature is at an end.

No authority is cited in support of that position, and in our opinion it is not maintainable.

If respondent's contention is sound, then a circuit judge might be elected and qualify, and die or resign the next day, and whosoever the Governor might appoint to fill the vacancy would hold the office for the remainder of the entire term, six years, less the one day. In fact, the same would be true, if a judge of this court should die or resign the next day after qualifying. The appointee would hold the office of Supreme Judge for the remainder of the term, which would be ten years, less the one day.

Such a thing has never been done or suggested in this State, prior to this time, in so far as I have been able to learn; but upon the contrary, the universal construction of the Constitution has been the same as that contended for by the Attorney-General in this

case, and the practice has been in keeping therewith, both in the circuit and Supreme Court.

We are of the opinion that there is no merit in this contention, and, therefore, rule against respondent on that point.

II.   If we correctly understand respondent, his second contention is that he is at least entitled to hold the office of judge of division number two of said court until the first Monday in January, 1913.

The legal proposition involved in this case is, when did the term of Judge Amick's office expire?

He contends that his term does not expire until the first Monday in January, 1913, and, consequently, that he is still the legally constituted judge of division number two of said court, and that he has the legal right to hold the office until that date. While upon the other hand the Attorney-General insists that his term of office expired on November 6, the day after the general election of 1912 was held, and at which his successor in office was elected.

Respondent bases his contention upon section 5828, Revised Statutes 1909, which reads as follows:

"Sec. 5828.—Whenever any vacancy, caused in any manner or by any means whatever, shall occur or exist in any state or county office originally filled by election by the people, other than the office of Lieutenant-Governor, State Senator, Representative, sheriff or coroner, such vacancy shall be filled by appointment by the Governor; and the person so appointed shall, after having duly qualified and entered upon the discharge of his duties under such appointment, continue in such office until the first Monday in January next following the first ensuing general election—at which said general election a person shall be elected to fill the unexpired portion of such term, or for the ensuing regular term, as the case may be, and shall enter upon the discharge of the duties of such office

the first Monday in January next following said election:  *Provided,* however, that when the term to be filled begins or shall begin on any day other than the first Monday in January, the appointee of the Governor shall be entitled to hold such office until such other date."

This section of the statute authorizes the Governor to fill any vacancy by appointment that may occur in any state or county office except that of Lieutenant-Governor,   State   Senator,   Representative, sheriff or coroner, and provides that the person so appointed shall continue in said office until the first Monday in January next following the first ensuing general election.

It cannot be gainsaid but what this section is sufficiently broad and comprehensive, and, if standing alone, would authorize an appointment to fill a vacancy occurring in the office of judge of division two of the circuit court of Buchanan county.  But we do not understand the Attorney-General to controvert that proposition, but he insists that said section is not applicable to vacancies in office of any judge of any court of record in this State, for the reason that section 3896, Revised Statutes 1909, was enacted to cover that particular subject, and that both of said sections are harmonious and stand together.

Section 3896 is copied in paragraph one of this opinion, and will not be repeated here.

Sections 3896 and 5828 were both enacted in 1879 and have come down unchanged through the various revisions of the statutes.

If these two statutes are consistent and can stand together, then it is the duty of the court to harmonize rather than to hunt for conflict of statutory provisions *in pari materia.*

In discussing this canon of statutory construction, the Supreme Court of the United States, in the case

247 Mo.—19

of Frost v. Wenie, 157 U. S. 58, used this language:
"It is well settled that repeals by implication are not
to be favored.  And where two statutes cover, in whole
or in part, the same matter, and are not absolutely ir-
reconcilable, the duty of the court—no purpose to re-
peal being clearly expressed or indicated—is, if pos-
sible, to give effect to both.  In other words, it must
not be supposed that the Legislature intended by a
later statute to repeal a prior one on the same sub-
ject, unless the last statute is so broad in its terms and
so clear and explicit in its words as to show that it
was intended to cover the whole subject, and, there-
fore, to displace the prior statute."

And in the case of State ex rel. v. Patterson, 207
Mo. l. c. 144, this court used the following language:
" 'All consistent statutes relating to the same subject,
and hence briefly called statutes *in pari materia*, are
treated prospectively and construed together as
though they constituted one act.  This is true where
the acts relating to the same subject were passed at
different dates, separated by long or short intervals,
at the same session or on the same day.  [Sutherland,
Statutory Construction, sec. 283.] And 'a statute must
be construed with reference to the system of which
it forms a part.  And statutes on cognate subjects may
be referred to, though not strictly *in pari materia.*'
[Id., sec. 284.]' "

In the case of Humphries v. Davis, 100 Ind. l. c.
284, the Supreme Court of Indiana, speaking through
ELLIOTT, J., said:  "A statute is not to be construed
as if it stood solitary and alone, complete and perfect
in itself, and isolated from all other laws.  It is not
to be expected that a statute which takes its place in a
general system of jurisprudence shall be so perfect
as to require no support from the rules and statutes
of the system of which it becomes a part, or so clear
in all its terms as to furnish in itself all the light
needed for its construction.  It is proper to look at

other statutes, to the rules of the common law, to the sources from which the statute was derived, to the general principles of equity, to the object of the statute, and to the condition of affairs existing when the statute was adopted. [Citing authorities.]  . . .  'Construction has ever been a potent agency in harmonizing the operation of statutes with equity and justice.' Statutes are to be so construed as to make the law one uniform system, not a collection of divers and disjointed fragments. When this principle of construction is adopted, 'an enactment of to-day has the benefit of judicial renderings extending back through centuries of past legislation.' [Bishop, Written Laws, sec. 242b.] 'A statute,' says the author just referred to, 'must be construed equally by itself and by the rest of the law. The mind of the interpreter, if narrow, will stumble.' 'The completed doctrine, resulting from a bringing together of its parts, is, that all laws, written and unwritten, of whatever sorts and at whatever different dates established, are to be construed together, contracting, expanding, limiting and extending one another into one system of jurisprudence as nearly harmonious and rounded as it can be made without violating unyielding written or unwritten terms.' [Bishop, Written Laws, secs. 113a, 86.]''

If we observe and give force and effect to the foregoing rules of construction in interpreting sections 3896 and 5828, then we must read them together— that is, read the one into the other as one enactment. [State ex rel. v. Patterson, supra, l. c. 148.]

And by so doing sections 5828 and 3896 would read substantially as follows: Whenever any vacancy shall occur in any state or county office other than the office of Lieutenant-Governor, State Senator, Representative, sheriff or coroner, such vacancy shall be filled by appointment by the Governor; and the person so appointed shall continue in office until the first Monday in January next following the first general elec-

tion: *Provided,* that if the office of the judge of any court of record in this State shall become vacant, such vacancy shall be filled by appointment of the Governor until the next general election held after such vacancy occurs, when the same shall be filled by election for the residue of the unexpired term.

By so reading and construing those two sections together, we eliminate all seeming conflict that exists between them and harmonize all the laws of the State regarding vacancies in state and county offices and the mode of filling same, and at the same time give full force and effect to the plain and clear meaning of the Legislature as expressed in the two sections, which is always the main object to be obtained in construing any statute.

Laws should be so construed as to give their intent paramount effect. [City of St. Louis v. Lane, 110 Mo. 254.]

There is another rule of statutory construction, which, if followed in the interpretation of these two sections of the statute, the conclusions reached would be the same as before stated. That rule is stated in the case of Ruschenberg v. Railroad, 161 Mo. 70, in substantially the following language:

Where there are two acts and the provisions of one apply specially to a particular subject, which clearly includes the matter in question, and the other general in its terms, and such that if standing alone it would include the same matter, and thus conflict with each other, then the former act must be taken as constituting an exception to the latter or general act, and not a repeal of the former, and especially is this true when such general and special acts are contemporaneous.

To the same effect are the following cases: State ex inf. v. Dabbs, 182 Mo. l. c. 366; State ex rel. v. Frazier, 98 Mo. 426; State ex rel. v. Slover, 134 Mo. l. c. 19.

It is perfectly clear from reading the two sections that the provisions of section 3896 apply specially to vacancies in the office of judge of courts of record and the manner of filling them, and that those of section 5828 are general in its provisions and are sufficiently broad, if standing alone, to embrace vacancies in the office of the judge of courts of record; and if the former is not to be construed to be an exception to the latter, then there would be a clear conflict between them; but since both sections were enacted at the same time and stand *in pari materia,* we must interpret them together, according to the rule before mentioned, and when so done the legislative intent is clear, and we must hold that section 3896 is an additional exception to those stated in section 5828.

This identical question came before this court in the case of State ex rel. v. Perkins, 139 Mo. 106, l. c. 116, and this court there held that, where a circuit judge had been appointed until his successor should be elected and qualified, under section 3276, R. S. 1889, which is the same as section 3896, Revised Statutes 1909, the official term of such appointee expired at the general election in November, 1896, and could not be extended by reason of the fact that the commission issued to him by the Governor assumed to appoint him for a term of office expiring when his successor should be elected and qualified.

And the same question was again presented to this court in the case of Mayes v. Palmer, 206 Mo. 293, and on pages 299 to 301, inclusive, this language was used:

"We will now return to the question first presented by this record. Was the Hon. H. W. Johnson, in fact, judge of the circuit court of Lincoln county at the time the judgment was entered in this case?

"Judges Hughes, the regularly elected, qualified and acting judge of that circuit, died in the summer of 1903, thereby causing a vacancy in that office. The

Governor first appointed Robert D. Rogers judge to fill the vacancy, who resigned and left the office vacant again, and on August 19, 1903, the Governor appointed H. W. Johnson judge of that circuit to fill the second vacancy. Conceding Judge Johnson served under that appointment until the general election, on November 8, 1904, and was then elected to fill out the remainder of the term, which was December 31, 1904, as claimed by appellants, Judge Johnson's appointment and election were in strict compliance to the requirements of section 1631, Revised Statutes 1899, which is as follows:

" 'If the office of the judge of any court of record of this State shall become vacant from death, resignation, or from any other cause, such vacancy shall be filled by the appointment of the Governor until the next general election held after such vacancy occurs, when the same shall be filled by election for the residue of the unexpired term.'

"According to this section, he was judge of the eleventh judicial circuit without an intermission from August 19, 1903, to December 31, 1904. It is true he filled a portion of that term under his appointment, and the remainder of it under his election; but the two periods put together covered the residue of the term from August 19, 1903, to December 31, 1904. . . .

"We are, therefore, unable to concur with the views of counsel for appellants wherein he contends the trial, the finding of facts and the judgment dismissing this cause were not made and rendered during the same term of office of the judge who tried the case."

The same conclusions were reached in the cases of State ex rel. v. Burkhead, 187 Mo. 14, and State ex inf. v. Lund, 167 Mo. 228. These cases are controlling in the case at bar.

We are clearly of the opinion that upon both principle and authority respondent's term of office expired

on the day following the general election held on November 5, 1912.

The questions involved are legal propositions about which minds of honest men might and have heretofore differed, and this proceeding has presented a favorable opportunity for this court to finally settle that vexed question.

Respondent has briefed and argued his case under five separate topics, but for brevity and convenience we have disposed of them in the two paragraphs of the opinion.

We are, therefore, of the opinion that the writ of ouster should issue, and it is so ordered.

All concur; *Graves, J.,* in separate opinion in which *Lamm, Kennish* and *Brown, JJ.,* concur.

## CONCURRING OPINION.

GRAVES, J.—I fully concur in the opinion of our brother Woodson in this case, unless it be as to some language used about the case of State ex inf. v. Dabbs, 182 Mo. 359. I am not clear as to the meaning of the language used by my brother as to this case, but do not wish to be misunderstood myself thereon. I thought at the time that case was ruled that it was badly ruled; and my investigations since have confirmed those views. I further think that language therein used lends support to respondent's contention in this case. In this situation I am of the opinion that we should not attempt to justify the ruling in the Dabbs case, or to distinguish it from the case at bar. By refinement it might be distinguished, but I think the case wrong on principle, as well as under the statutes and Constitution, and should be so dealt with in the case at bar. Much in the principal opinion indicates that my views are my brother's views, and this special concurrence is only made to make certain my position. *Lamm, Brown* and *Kennish, JJ.,* concur in these views.