## WILLIAM H. AIKEN, Appellant, v. SIDNEY STEEL SCRAPER COMPANY, Respondent.

**Kansas City Court of Appeals, November 5, 1917.**

1. **NEGLIGENCE: Customer: Elevator Shaft: Twilight.** Where a party injured was acquainted with the location of the elevator in a business house in which he had entered as a customer of one of the joint occupants and knowing that it had no gate or guard, went to the place where the elevator was, it being located where it was neither clearly light nor dark, but was in a deceptive state between the two, as in twilight, seeing the open shaft and it having the appearance to him of the elevator floor, stepped into the empty space and fell to the floor below; it was *held* that the question of his being guilty of contributory negligence was for the jury.

2. ———: ———: **Invitee: Joint Occupant: Elevator Shaft.** Where one who kept for sale implements, and their different parts, had them in a building which he held in joint occupancy with another by leasing from the other; it was *held* that a customer was an invitee of such person, and that such person was liable to the customer for an injury received by stepping into an unguarded elevator shaft.

3. **CIRCUIT JUDGE: Vacancy: Appointment: Term.** Under section 3896, R. S. 1909, the appointment by the Governor of a judge of the circuit court cannot be for a longer period than the following general election and such appointee's term then ends.

4. ———: **Failure to Qualify: Oath of Office.** Where a judge of the circuit court was appointed until the next general election, to fill a vacancy and he is elected for the balance of the term in which the vacancy occurred, his failure to qualify by taking the oath required by the Constitution (Art. 14, Sec. 6) will not invalidate any official action taken by him which was had without objection.

5. ———: **Oath of Office: Necessity for: Title.** While the failure to qualify by taking the oath of office might be sufficient cause to prevent him from discharging the duties of the officer, or from receiving its emoluments; yet such oath is not a necessary prerequisite to the validity of his official acts. It is a mere incident and no part of the title to the office itself.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

REVERSED AND REMANDED.

197 M. A.—43

*Walsh & Aylward* and *Ben Terte* for appellant.

*Sebree, Conrad & Wendorff* and *J. D. Barnes* for respondent.

ELLISON, P. J.—Plaintiff was injured by falling down an open elevator shaft. He charges defendant with negligence and brought the present action. At the conclusion of the evidence in his behalf the trial court gave a peremptory instruction to the jury to find a verdict for defendant.

It appears that defendant kept machinery for sale and that plaintiff desiring to purchase an attachment or casting belonging to certain machinery went to defendant's establishment and was waited upon by a Mr. Hall, defendant's employee in charge of the stock. Hall informed him they did not have what he wanted detached, but thought he had it attached to machinery which he kept in the basement, and at Hall's suggestion they went down to the basement in the elevator to see. Hall ran the elevator. They found what plaintiff wanted and Hall said he would have a mechanic detach it, and as it would take a little time, invited plaintiff to go to a nearby place for lunch. On their return, as they entered the building, some one wanted to speak to Hall, he stopped, said something to plaintiff about his going on to the elevator, but just what it was is not made clear by plaintiff's testimony in his own behalf. At one place he stated that Hall directed him to go on "*to* the elevator and wait for him to come." At another place he stated it, "Go around *to* the elevator and I will be there in a few minutes." At another place he stated that Hall told him to "wait *in* the elevator." Defendant objects to this evidence being accepted as a direction for plaintiff to get into the elevator, and that it should be taken to mean that plaintiff was to go to the elevator and that he would be along presently.

As it will make no difference in our disposition of the case we will consider the latter to be the meaning of plaintiff's testimony.

The testimony showed that when plaintiff went to the basement with Hall before going to lunch he did not observe there was a gate to the elevator shaft. We think it fairly to be inferred that he must have seen there was no gate at that particular time working in connection with the movement of the elevator.

He testified that after leaving Hall he, in obedience to Hall's request, proceeded to the elevator and observed again that it was poorly lighted at that place, there being only one electric bulb and that down at the end of the room. He said, "I just walked around there, and thinks this thing is all open and I couldn't see anything but the floor; it looked like the floor, the whole thing did, and I walked in there as onto an elevator, but the elevator was not there, there was no gate there either. I stepped off in there and that is the last I knew." At another place he stated that the empty space in the shaft "looked exactly like the floor in the elevator and I supposed the floor of the elevator was there;" and that you could not tell the difference "to save your life." He was asked: "What was it that prevented you from knowing the elevator was not there" and his answer was, "It was not light enough to see."

In this connection plaintiff has cited us to authority to the effect that when one sees an elevator gate open, it is an implied assurance that he may safely enter. The applicability of these is rendered doubtful here since plaintiff, on his first trip to the basement, had seen there was no gate. It is therefore left for us to determine, without the aid of such authorities, the status of the evidence on the question of contributory negligence —does it appear, as a matter of law, or is it of doubtful character, to be solved by a jury?

We think it is for the jury. Accepting the evidence in plaintiff's behalf for the fact, as we must, it is manifest that defendant, for the purpose of transacting business with plaintiff invited him to use an elevator which was so dimly lighted as to make appearances deceptive. It was not the light of broad day so that one could be charged with listlessly and blindly blunder-

ing into an elevator shaft; nor was it so dark that one could know, or realize, that he could not see. But it was in that indefinable state between full hight and complete darkness which permits one to see imperfectly, and frequently deceptively, as in twilight. Plaintiff's case meets that situation. [9 Ruling Case Law 1258; Morgan v. Saks, 143 Ala. 139, 141; Noyes v. Des Moines Club, 160 N. W. 215, 218; Marshall v. United Railways, 184 S. W. 163.] He approached the elevator intending to step in and wait for Hall. He thought he saw it—the open space had exactly the appearance of the floor—and he stepped in. All prudent men will not say that a reasonable man would not have been so deceived and have acted in like manner, and that being true plaintiff's conduct should be judged by a jury.

It appears that Tomlinson & Co. were the lessees of the building and that they sublet a certain space therein to defendant "Sidney Steel Scraper Company." Both these were made parties defendant, but the case was dismissed as to the former. The contract between these parties was that Tomlinson & Co. were "to furnish you with 2400 square feet, floor space, 24 X 100, at a rental of $50. per month, this charge covering the unloading of cars, proper arrangement of stock in the warehouse, filling of orders as per your instructions. In addition to the above, we are to furnish you with Office space, Electric light, Heat, use of vault for storing records, Telephone service, including name in Telephone Directory."

The idea is advanced that defendant, the Scraper Company, is not liable because it was not in control of the building and elevator; and cases are cited which we think have no bearing on the facts upon which plaintiff relies for his action. The facts, as the evidence in plaintiff's behalf tends to show them, are that defendant rented of Tomlinson and that it kept goods, wares and merchandise for sale stored in the building—some in the basement where the article in controversy was found—and some upstairs. That it sold these articles to purchasers and that it used the elevator for carrying up

and down, both its goods and its customers to whom it showed and sold them. In the instance in controversy, plaintiff called, as a customer, on defendant, asked for what he wanted and was taken in charge by defendant's manager Hall, with the result already stated. That defendant became liable for negligence in showing and directing plaintiff over the premises and in the means he was invited and directed to use, there should be no doubt. When one "invites the use of his premises for purposes connected with his own benefit," the party becomes an invitee and it is the duty of the person inviting him to take ordinary care to prevent an injury to him. [Glaser v. Rothchilds, 221 Mo. 180, 185.] As said by the Supreme Court of Iowa, " It was as much the duty of one tenant as the other to see that this elevator was properly protected *and to those whom they invited to come they owed an affirmative duty.*" [Burner v. Higman, 126 Iowa 580, 586.] "The particular tenant extending the invitation is liable." [Ib. 590; see, also, Reynolds v. John Brod Chem. Co., 192 Ill. App. 157.] And there is neither justice nor reason in the idea that plaintiff, a customer invited into the building by defendant, should be held bound by defendant's private contract as a subtenant.

Defendant has cited us to Andrus v. Bradley Anderson, 117 Mo. App. 322 and McGinley v. Alliance Trust Co., 168 Mo. 257, as sustaining its theory that it was not in control of the elevator and could not be liable for the injury received by plaintiff. That and other cases cited do not resemble this. That case was brought against a tenant by his employee. The tenant had nothing to do with the operating of the elevator and "from the nature and subject-matter of the contract of leasing, was not and could not, as tenant, have been in control of it." This case belongs to a different class and is instituted by a party plaintiff sustaining an altogether different relation to the party defendant. This plaintiff was defendant's customer invited into the building where it kept its goods for sale and invited to go to the particular place where the goods were

by way of an elevator which defendant undertook to operate.

But a point is made against the authority of the judge presiding at the trial. It seems that Hon. Joseph A. Guthrie was judge of the circuit court presiding over the division in which this case was tried. His term would have expired the 1st of January, 1917. Several months prior to the general election held on the 7th of November, 1916, he resigned and the Governor appointed Hon. Thomas B. Buckner as his successor. The latter was elected at that election for the full term of six years, beginning the first Monday in January, 1917; and conceiving that his appointment and commission to succeed Judge Guthrie would not entitle him to the office longer than the general election on November 7th, he became a candidate and was elected for what was designated the short term, that is, the space of time between the November election and the first Monday in January.

One section of the Statute of 1909, section 3896, reads that, "If the office of the Judge of any court of record of this State shall become vacant from death, resignation, or from any other cause, such vacancy shall be filled by the appointment of the governor until the next general election held after such vacancy occurs, when the same shall be filled by election for the residue of the unexpired term."

Another section of the same statute, section 10197 reads, "All officers elected or appointed by the authority of the laws of this State shall hold their offices until their successors are elected, or appointed, commissioned and qualified."

Another section, (5828) reads that, "Whenever any vacancy, caused in any manner or by any means whatsoever, shall, occur or exist in any state or county office, originally filled by election by the people, . . .; and the person so appointed shall, after having duly qualified and entered upon the discharge of his duties under such appointment, continue in such office until the first Monday in January next following the first ensuing general election—at which said general election a person

shall be elected to fill the unexpired portion of such term, or for the ensuing regular term, as the case may be, and shall enter upon the discharge of the duties of such office the first Monday in January next following said election . . ."

It further appears that Judge BUCKNER duly qualified under his appointment by the governor and entered upon the discharge of his duties. But that after the election on November 7th, he did not again qualify by taking the oath of office, but he nevertheless continued in the discharge of the duties of the office until the first Monday in January when he qualified for the full term to which he had been elected.

This case was tried between the general election and the 1st of January and the particular point is that as Judge BUCKNER did not qualify for that time under his election for that period, he was without right to act as judge and the trial was a nullity.

It has been held by the Supreme Court that under the provisions of section 3896, Revised Statutes 1909, above quoted, the appointment of a person to the office of circuit judge to fill a vacancy by death or resignation of the incumbent can only be until the next general election and that he ceases to be judge at that time. [State ex rel. v. Perkins, 139 Mo. 106; State ex rel. inf. v. Amick, 247 Mo. 271, 293.]

Applying this construction of the statute to the facts of this case, we must hold that Judge BUCKNER's term under his appointment by the governor expired at the general election held on the 7th of November, 1916, and that his term of office thence on the first Monday in January, 1917, would be under that election. He should have qualified under a commission based on that election, and not having done so he was acting without due authority.

But the question remains, whether having acted, unchallenged, his acts are not valid, under the rule relating to *de facto* officers. We think, undoubtedly, in all official actions had by him in the few weeks between the election and the first Monday in January, 1917, which

were not objected to on the ground that he was not clothed with official authority, his acts are valid. The point was suggested but not decided, in State ex rel. v. Perkins, supra.

In this case the question of not qualifying was not raised until the motion in arrest of judgment was filed. The specification of the objection and the affidavit in support of it, are in such peculiar form as to put to us the question whether the point has been preserved. The motion, alone is not sufficient; it merely specifies that Buckner was appointed until the next general election after his appointment and that his term then expired. That is the full specification. But if we will take judicial notice that he was elected for the balance of the term, to succeed his appointment (State ex rel. v. Amick, supra) and as he continued to discharge the duties of the office we should assume, nothing appearing to the contrary, that he qualified.

But the affidavit does affirm the point that Buckner did not qualify as judge under said election, and it is stated in the motion in arrest that an affidavit "in support of the first of the grounds for this motion (the ground in question) is filed herewith" But we cannot allow the evidence in support of a motion in arrest to supply a necessary allegation the statute requires to be specified in the motion.

However, we would prefer to pass by this mere technical objection and determine the broad question whether the failure to take the oath of office required by the statute is necessary to the legality of action taken by an officer duly elected and commissioned. For, as said above, we take judicial notice that Judge BUCKNER was elected and we should presume that the governor performed his duty in delivering a commission to him. The oath of office does not make the individual an officer. It merely relates to the manner in which he shall perform the duties of the office. It is perhaps true that were it known that an officer had not taken the oath of office he could be prevented from entering upon its duties generally, or in any particular

case, until he had taken that step. It may be that the emoluments of the office could be withheld from him; but the oath is no more than an invocation to God that he will be faithful to the trust reposed in him, and it is not a necessary prerequisite to the validity of his official acts.

So it is stated to be the law that an oath of office "is not indispensable, it is but a mere incident to the office and constitutes no part of the office itself." [Mechems Public Offices, sec. 255.] In Clark v. Stanley, 66 N. C. 59, 60, it is said that, "Public officers are usually required to take an oath, and usually a salary or fees are annexed to the office, in which case it is an office 'coupled with an interest.' But the oath and the salary or fees are mere incidents, and constitute no part of the office."

On the same subject we take the following from 23 Am. & Eng. Encyc. of Law (2 Ed.), 355: "The failure of a person duly elected or appointed to an office to take the prescribed oath or give a bond, as required, or either, does not, when he has proceeded to exercise the functions of the office, invalidate his acts so far as the public or third persons are concerned. As to them, his acts are as valid as thouh he were an officer *de jure*. His title to the office cannot be attacked collaterally, but only by direct proceedings in the nature of *quo warranto*. The failure to qualify constitutes a ground for ousting him from the office."

A failure to qualify by filing a bond when required, does not vacate the office. [State v. Churchill, 41 Mo. 41; State v. County Court, 44 Mo. 230.] In Sproul v. Lawrence, 33 Ala. 674, it is said that the election gives the right and invests him with title to the office. And that is the view taken in this State, even the commission being held to be mere evidence of his title.

From these views it follows, that the fact that Judge BUCKNER failed to take the required oath of office following his election to the short term, falling between the expiration of his appointment and the be-

ginning of his full term, did not invalidate his official acts taken during that time.

We think the trial court should not have given the peremptory instruction and the judgment will be reversed and the cause remanded that a trial may be had.    All concur.