STATE OF MISSOURI ex inf. JOHN M. DALTON, Attorney General, Relator, v. ELVIS MOUSER, Respondent, No. 44898—284 S. W. (2d) 473.

Court en Banc, December 12, 1955.

566

*John M. Dalton,* Attorney General, *Robert R. Welborn,* Assistant Attorney General, and *J. Richard Roberts,* Special Assistant Attorney General, for relators.

*Richard M. Webster* for respondent.

[474] HOLLINGSWORTH, J.—This is an original proceeding in the nature of quo warranto brought by the Attorney General to oust respondent Elvis Mouser from exercising the powers, functions and duties of the office of Clerk of the Circuit Court and Ex Officio Recorder of Bollinger County, which it is alleged respondent has usurped and now unlawfully exercises. The facts are not in dispute.

Bollinger County is a county of the fourth class. By virtue of §
59.090 RSMo 1949, V.A.M.S., the clerk of the circuit court is the ex
officio recorder thereof. (All statutory references herein are to RSMo
1949 and V.A.M.S., unless otherwise indicated.)

At the general election of 1950, respondent was elected clerk of the
circuit court for a term of four years beginning on the first Monday
in January, 1951, and until his successor should be elected and quali-
fied. At the general election of 1954, respondent became and was a can-
didate to succeed himself for the next ensuing term of four years to
begin on the first Monday in January, 1955, and Murrell J. Taylor
became and was his only rival candidate. Murrell J. Taylor received
a majority of the votes cast at said election, thereby defeating respond-
ent. Following the election and prior to entering upon the duties of
said office or qualifying so to do, to wit: on December 7, 1954, Murrell
J. Taylor died. On January 6, 1955, the Governor appointed Mrs.
Medford J. Taylor as successor to respondent and she thereafter, on
January 8, 1955, qualified for said office. Notwithstanding the facts
aforesaid, respondent, under claim of right, has continued without
cessation or abandonment to exercise all of the powers, functions and
duties of said office to the exclusion of the Governor's appointee.

Article VII, § 12, of the Constitution provides: "Except as
provided in this Constitution, and subject to the right of resignation,
all officers shall hold office for the term thereof, and until their succes-
sors are duly elected or appointed and qualified."

Section 483.015 of the statutes provides that at the general election
of 1882 and every four years thereafter clerks of certain courts of
record (including the clerks of circuit courts) shall be elected and
shall enter upon their duties on the first Monday in January next
ensuing their election and that they "shall hold their offices for the
term of four years, and until their successors shall be duly elected and
qualified, * * *."

Section 483.020 provides: "When any vacancy shall occur in the
office of any clerk of a court of record so elected, by death, resignation,
removal, refusal to act or otherwise, it shall be the duty of the governor
to fill such vacancy by appointing some eligible person to said office,
who shall discharge the duties thereof until the next general election,
at which time a clerk shall be chosen for the remainder of the term,
who shall hold his office until his successor is duly elected and quali-
fied, unless sooner removed."

It is in effect conceded that if the latter section invests the governor
with power to appoint a successor to respondent, then respondent
has unlawfully usurped the office in question since the appointment
and qualification of Mrs. Taylor.

In the early case of State ex inf. Crow v. Dabbs, 182 Mo. 359, 81
S.W. 1148, this court held that the death of a person elected circuit
judge before he had qualified created [475] no vacancy in the office

and that the incumbent was entitled to serve the full term to which the deceased had been elected. And, it must be candidly admitted, such is the majority rule. See cases annotated in 74 A.L.R. at page 486 et seq. However, in the case of State ex inf. Major v. Amick, 247 Mo. 271, 285, 152 S.W. 591, 594, the doctrine announced in the Dabbs case, supra, was expressly renounced by this court as being contrary to the history and traditions of our concept of majority rule, "in the light of the spirit of our election laws, with the liberal provisions for filling vacancies in all offices, * * *." See special concurring opinion, loc. cit. 598, in which a majority of the judges agreed. And, in the more recent (1944) case of State ex rel. Bothwell v. Green, 352 Mo. 801, 180 S.W. 2d 12, 13, this court, en banc, although noting that the rule announced in the Dabbs case, supra, was the general rule in a majority of the states, yet disregarded it as being effective in this state under the later ruling of the Amick case, supra, and pertinently said of it: "The rule springs solely from the constitutional and statutory provisions of the jurisdictions which apply it." And so it is, of course, that we must consider the purpose and meaning of § 483.020, under which the Governor acted in appointing Mrs. Taylor as successor to respondent. Burnett v. Brown, 194 Va. 103, 72 S.E. 2d 394.

The ruling in the Amick case, 247 Mo. 271, 152 S.W. 591, 594, which renounced the majority rule formerly adopted in the Dabbs case, is in accord with the constitutional and legislative policy of this state. In State ex inf. Barrett v. McClure, 299 Mo. 688, 253 S.W. 743, 744, we held that "the legislative policy of the state has been to fill the vacancy for an elective office by election as soon as practicable after the vacancy occurs." Respondent in effect so concedes. In the concluding paragraph of his brief, he states: "The respondent respectfully submits to this Court that the death of Murrell J. Taylor after his election to, but prior to his qualifying for, the office of Circuit Clerk and Ex-Officio Recorder of Deeds of Bollinger County did not create a vacancy because the incumbent, respondent, is entitled to remain in office until a successor is elected and qualified. It is not the respondent's contention that he is entitled to serve a full four year term. *It is the respondent's position that he should serve until a successor may be elected.*" (Emphasis ours.)

The trouble with respondent's suggestion is that there is absolutely no authority to elect a successor at the next general election to fill an unexpired term of a circuit clerk except that provided in § 483.020, *under which the Governor appointed respondent's successor to serve until the next general election.* Respondent does not contend otherwise; at least, he makes no pretense of citing any authority for the election at the next general election of a successor to serve the unexpired term of respondent. Insofar as we have discovered there are only two statutes under which a successor to a circuit clerk elected by the people, as was respondent, can be elected prior to the end of a full

term. These are (1) a general statute, § 105.030, applying to all state and county officers (with certain non-pertinent exceptions), and (2) said § 483.020, referring especially to clerks of courts of record and under which, as stated, the Governor purported to act. The latter section, being special, would govern over the general statute. But, in this case, it would make no difference which of the two is applicable. Both expressly apply to officers who have been elected by the people and both direct appointment of a successor by the Governor to serve until the next general election *only when a vacancy has occurred.* Now respondent cannot blow both hot and cold on the effect of these statutes. If, as respondent contends, there is no vacancy in the office of respondent by reason of the death of Murrell Taylor prior to qualifying, then, under § 483.015, respondent's tenure must continue for a full four years from the first Monday in January, 1955, and until his successor is elected and qualified; and if in the general election of 1958 a successor be elected to succeed him, but does not qualify, then respondent could continue in office another term; and so it [476] could continue indefinitely. Such a possibility is contrary to the public policy of this state. With the foregoing in mind, we must seek to ascertain the true intendment of § 483.020.

It is phrased differently than any of the statutes or constitutional provisions construed in any of the cases to which we have been referred, including those cited in A.L.R. as sustaining the majority rule. We think its differing phraseology readily distinguishes its meaning from the general rule announced in those cases. It provides that "when any vacancy shall occur in the office of any clerk of a court of record *so elected* * * *", etc. (Emphasis ours.) Note that it does not refer to a clerk "so elected and qualified". The term "so elected" refers to and must be considered in pari materia with § 483.015. When so considered, the phrase clearly includes Murrell J. Taylor, who had been "so elected" but had not qualified. We must assume, nothing to the contrary appearing, that had the Legislature intended to limit the meaning of the term "any vacancy" as applying only to a person who had been elected and qualified, it would have said so. In this connection, note also the designed use of the phrase "elected and qualified" in a later clause of the statute when the legislature defined the electee's tenure in these words "who shall hold his office until his successor is duly elected and qualified", thereby evidencing a mindful distinction between the meaning of the term "elected" as used in the first part of the statute and the phrase "elected and qualified" as used in the latter portion thereof.

We also observe a further provision of the statute which we think reveals a clear intention not to limit its provisions to a person who has qualified and entered upon his duties. By its terms it becomes operative when any vacancy occurs "by death, resignation, removal, *refusal to act* or otherwise". (Emphasis ours.) Surely, the phrase "refusal to

act", by any fair interpretation of its intendment, must be construed to refer specifically to a person who, after being elected, refused to act, as distinguished from a person who, after qualifying, refused to act. Of course, such a phrase conceivably could apply in the latter case, but ordinarily such a person would resign or, if he refused to act and failed to resign, he would be subjected to removal. Now, if the phrase "refusal to act" does, as we think, refer to a person who, although elected, refused to qualify, and thereby creates a "vacancy" within the meaning of the statute, then as a matter of course so do the other applicable causes of vacancy set forth in the statue, to wit: "death" and "resignation", also refer to a person elected but who has not qualified.

And, finally, it must be borne in mind that the four year term to which respondent was elected had ended and there was a vacancy in his office but for the further provision of § 483.015 that he continue to serve until his successor was elected and qualified. Obviously, § 483.015 deals only with the tenure of clerks who serve their full term and the election of their successors in ordinary course. It does not contemplate or deal with the tenure or method of selection of those who are to succeed to the office to serve an unexpired term. The clause authorizing clerks elected under its provisions to serve until their successors are elected and qualified certainly was not enacted for the benefit of the clerks so elected nor for the primary purpose of giving them a longer term than four years. Its purpose is primarily for the benefit of the public, to wit: that there be no interruption or hiatus in the functioning of the office to the detriment of the public; and the resultant extension of tenure is purely incidental. So, therefore, it would seem clear that when the necessary steps are taken by the Governor under the provisions of § 483.020 to prevent any hiatus in the functioning of said office the purpose of the provision is served, the term to which the original holder was elected is ended and the vacancy becomes an accomplished fact; and an appointee of the Governor, upon qualifying, would succeed to the office.

We hold that the phrase "any vacancy", as used in § 483.020, should be and it is construed [477] to include the death of the electee or his refusal to act or to qualify following his election as well as any vacancy occurring after he has qualified. So construed in accord with its explicit terminology, the statute breathes life into the spirit of our election laws and expedites rather than frustrates the will of the people of Bollinger County, a majority of whom voting at the general election of 1954 opposed the election of respondent to succeed himself.

Our conclusion is supported by respectable authority. See the substantial list of states holding to the so-called minority rule set forth in 74 A.L.R. 494 and a later annotation in 164 A.L.R. 1248 et seq. In the case of Campbell v. Dotson, 111 Ky. 125, 63 S.W. 480, the facts and applicable constitutional provisions were similar to the facts and statu-

tory provisions hereinabove set forth. Of them, that court said: "It cannot be maintained that in such a case the old incumbent would hold over until the next regular election, and that his successor might then be elected; for there is no authority for holding an election at that time for such an office, unless there is a vacancy in it, and, if there is a vacancy, then it must be filled by appointment until that election, as was done in this case by the appointment of Dotson. We cannot believe it was intended by the constitution to bring about any such result as appellant's contention leads to. The term of county offices is fixed at four years. Elections are required to be held every four years to fill these offices. The persons elected enter upon the duties of their offices on the first Monday in January after their election. The term of the officer expires when the term of his successor begins. He holds until the election and qualification of his successor, so that there may always be an incumbent in the office to attend to the public business. * * * * The aim was simply to prevent an hiatus in the office in case the new officer for any reason failed to qualify. The constitution fixes a definite term for each of these offices, and fixes a definite time when the regular election to fill them shall be held. It also provides for filling vacancies, and requires that these shall be filled by election, except when the unexpired portion of the term is so short as to make this impracticable. The construction urged by appellant is wholly out of keeping with the spirit and purpose of the constituional provision. It is true, appellant holds until the election and qualification of his successor. His successor was elected at the November election, 1897. The person elected having died before the time for him to take possession of the office, the term for which he was elected became vacant, just as much as if he had died after qualifying, but before the time for entering upon the duties of his office; and when Dotson was appointed to fill this vacancy, gave bond, and took the oath, appellant's successor had been elected and qualified, and therefore his right to the office ceased."

In holding as we do, it should be understood that the acts of respondent as de facto clerk of the circuit court and ex officio recorder of Bollinger County since January 8, 1955, insofar as they concern the public or the rights of third persons, are to be considered as valid as though he had been a de jure officer. State ex rel. City of Clarence v. Drain, 335 Mo. 741, 73 S.W. 2d 804, 805-806.

It is the judgment of this court that respondent has unlawfully usurped the office of Clerk of the Circuit Court and Ex Officio Recorder of Bollinger County since January 8, 1955; that he be ousted of said office and its emoluments as of said date; and that all costs herein be taxed against respondent. All concur.