COMMONWEALTH ex rel. BROOM *v.* HANLEY.

The death of the person elected to fill the office of clerk of the Orphans' Court, before he has qualified himself according to law, does not create a vacancy, but the incumbent who is authorized to hold the office until his successor shall be qualified, holds over.

*Jan.* 22. *Quo warranto.* The suggestion set forth, that by a commission issued by the governor, dated December 14, 1848, directed to the relator, reciting that it appeared from the returns in the office of the secretary of the commonwealth, that at an election on the 10th of October last, O. Brooks was duly elected to the office of Clerk of the Orphans' Court for the city and county of Philadelphia, and that since the filing the said returns, said Brooks had deceased, and a vacancy had thereby occurred in said office, he, the said relator, was appointed and commissioned to hold the said office. That the relator had accepted the appointment and taken the necessary oaths, and given the requisite security, but that since the said date, David Hanley had used and still uses the said office and franchise, &c.

The answer of the respondent averred that he held the office rightfully. That he had been elected clerk, &c., on the second Tuesday of October, 1845, and had been commissioned to hold the said office for three years from the 19th December, 1845, *and until his successor should be duly qualified,* and that he had given the requisite security, &c., under which he claimed to hold the office. He admitted the election of Brooks as set forth in the suggestion, but averred that he had deceased on the 5th November, before he had in any way qualified himself, or been qualified to fill the said office, and before a commission had issued to him. That by the act of 1839, clerks of the Orphans' Courts are to be commissioned for three years, and until their successors shall be duly qualified. That the governor has no authority to appoint but in case of a vacancy; and that at the time of the decease of said Brooks, respondent was lawfully in possession of said office, and that no vacancy had occurred —whence the appointment of the relator was without authority.

To this the relator demurred.

*Reed,* for the relator.—The court has invariably shown a determination to carry out the intent and spirit of the constitution: 8 W. 344; 4 Wh. 186. Under the former constitution, the office now in question was held at the pleasure of the governor, and by his appointment. The constitution of 1838 changed the mode of

selection in two particulars: 1. In directing a popular election. 2. *In limiting the term to three years.* This is clearly defined, and was the object of the act of 2d July, 1839. This appears from § 3, which provides that the delay incident to a contested election shall be computed in the term of three years. This is reiterated in § 4. But for the convenience of the public, and to prevent a failure in the office, he is to hold "until his successor is qualified." The spirit of the constitution is violated by allowing him to hold for a longer period, and the qualification of this rule is to be strictly construed. The true construction is to confine it to the contingency of the person elected neglecting or becoming incapable of being qualified. But a vacancy proper is to be filled in the mode pointed out. No commission is to issue until the 1st of December following the election, and if, in that period, the person elected will not qualify, or cannot, then the incumbent holds over. And this emergency alone is thus provided for, as is apparent from the whole tenor of the instrument. For if there is no vacancy, and no appointment by the governor, there can be no election of a successor at the next general election, for that is allowed only in such cases. But a vacancy by death is one of the very instances specified in the 4th section, for the appointment by the governor, until the people at the earliest opportunity may fill the office. It is true a commission cannot issue until December 1st, but before that time the person is "elected to fill the office," and does fill it, so as to cause a vacancy within the intent of the law.

*J. and C. Fallon,* contrà.—To destroy the executive patronage, and substitute elections by the people, was the main object of the constitution. An appointment by the executive is allowed only where absolutely necessary, and then only until the first opportunity offered for a popular choice. This, it is submitted, is the great object of the new constitution. Why should the office be filled by the governor when there is an incumbent chosen by the people, under the constitution? But clearly the governor's right is limited to the case of a vacancy. Was there then a vacancy when he appointed? This is the only question; and the answer is found in the commission, which, according to the constitution and law, authorizes the respondent to hold until his successor is duly qualified. His successor must have been elected under the constitution, and qualified, i. e. capable of entering on the duties of the office. Here Brooks was not qualified; hence there was no successor, and his death did not leave the office vacant, because the respondent was then law-

fully filling it. It is conceded that an inability or neglect to qualify allows the incumbent to hold over. How can a case of inability to qualify more completely occur than by the death of the person elected?

ROGERS, J.—The rights of the relator and respondent depend upon the construction of that part of the amended constitution, which provides "That the prothonotaries of the Supreme Court shall be appointed by the said court for the term of three years, if they so long behave themselves well: prothonotaries and clerks of the several other courts, recorders of deeds, and registers of wills, shall at the time and places of election of representatives, be elected by the qualified electors of each county or district over which the said courts extend, and shall be commissioned by the governor. They shall hold their offices for three years, if they shall so long behave themselves well, *and until their successors shall be duly qualified.* Vacancies in any of the said offices shall be filled by appointments to be made by the governor, to continue until the next general election, and until successors shall be elected and qualified as aforesaid."

The cardinal rule in the construction of the constitution is the spirit and intention of its framers; and this intention we have endeavoured to carry out in The Commonwealth *v.* Swift, 4 Wh. 186, and in The Commonwealth *v.* Collins, 8 W. 344, and in other cases.

The respondent was elected clerk of the Orphans' Court, for this city and county, the second Tuesday of October, 1845, and being so elected, the then governor of the commonwealth issued a commission in due form, dated the 9th November, 1845, whereby the respondent was commissioned, in the language of the constitution, to be clerk of the Orphans' Court for the term of three years to be computed from the 1st day of December, 1845, *and until a successor shall be duly qualified.*

The respondent took the oath of office, gave bond with sureties as required by law, was in all respects duly qualified, entered on the duties of his office the 1st December, 1845, behaved himself well, and has since used and continued to use and exercise the same.

The second Tuesday of October, 1848, Oliver Brooks was elected successor to the same office, but having died the 7th November, 1848, within thirty days (the time prescribed by the act of the 2d July, 1839) from the day of election, he never was nor could be

qualified to fill the office by taking the necessary oath or by giving bond as the law requires. In this position, the governor, reciting that a vacancy had occurred in the office, issued his commission to the relator.

The relator contends that, according to the spirit of the constitution, the tenure of county offices is strictly limited as to time, viz: three years; that any extension of the time arises only from the exigency of the case, and must be strictly construed; that the holding over the incumbent is confined to the single instance of failure to qualify—a failure resulting from the act or omission of the successor; that there can be no holding over when a vacancy occurs which is to be filled for a limited time by executive appointment; that if neither the death of the successor, before his commission takes effect, nor the expiration of the term of three years for which the respondent was elected and commissioned, create a vacancy, the incumbent necessarily holds over for three years, and a popular election next year is defeated; that the office, so far as to create a vacancy by death, is filled by election, and that at the expiration of the term of three years, for which an incumbent is elected and commissioned, a vacancy occurs, even though there be no election by the people, as, in case of a tie, such incumbent continues under a provisional tenure, being only a temporary officer, until his successor shall be duly qualified.

The respondent denies and avoids the several propositions of the relator, and insists that sedulous care is taken in the amended constitution to restrict, as far as possible, the patronage of the executive, and to give him the power of appointing to the office in question *only* when the public necessity requires it; that the governor has the right of appointment in the single case where a vacancy has occurred, and then only because public convenience demands that there should be some actual incumbent competent to fulfil the duties of the office.

The fundamental error which lies at the root of the whole case of the relator, consists in the assumption that, according to the spirit of the constitution, the tenure of county offices is strictly limited as to time, viz: three years; and that any extension of the time arises only from the exigency of the case, and must be strictly construed.

The relator assumes that the respondent was elected and commissioned only for three years; but this is a mistaken view of the constitution, and is only plausible by obliterating several important words from the constitution.

The constitution reads thus:—"They shall hold their offices for three years, if they shall so long behave themselves well, *and until their successor shall be duly qualified.*" The obvious meaning of this clause is, that they cannot hold office less than three years, if they so long behave themselves well; although, on the happening of certain contingencies, they *may* hold office for a longer period.

It is therefore of no consequence that, according to the respondent's construction, he holds office six, instead of three years. Without intimating an opinion as to the term of his office, or that, if as the relator contends, it would be a great misfortune, we think there is nothing in the argument which can overrule the plain words of the constitution.

That question does not directly, although it may incidentally arise, and may be and has been considered by the court, and due weight attached to it, without, however, altering the conclusion to which we have felt ourselves bound to come. Besides, it will be for the legislature to determine whether this result, so much deprecated by the relator, may not be removed by legislative enactment.

That the respondent is entitled to hold until his successor is duly qualified, are the words of the constitution.

Was there a successor duly qualified within the spirit of the constitution? is the point on which the question mainly, if not entirely depends. Being duly qualified in the constitutional sense, and in the ordinary acceptation of the words, unquestionably means that he, the successor, shall possess every qualification; that he shall, in all respects, comply with every requisite before entering on the duties of the office; that, in addition to being elected by the qualified electors, he shall be commissioned by the governor, give bond as required by law, and that he shall be bound by oath or affirmation (vide 8th article of constitution) to support the constitution of the commonwealth, and to perform the duties of the office with fidelity. Until *all* these pre-requisites are complied with by his successor (for if you can dispense with one, you can dispense with all), the respondent is *de jure*, as well as *de facto*, the clerk of the Orphans' Court.

The words are emphatic and full of meaning. The successor must not only be qualified, but *duly qualified;* and qualification for office, as defined by the most approved lexicographer, is endowment or accomplishment that fits for an office; having the legal requisites; endowed with qualities fit or suitable for the purpose.

In this sense it is used in the same section of the constitution,

2 X

section 3, article 6, as respects electors; "qualified electors" clearly meaning citizens, either native or naturalized, who have paid taxes, and who are in all other respects entitled to vote.

In the same connexion it is used in other parts of the constitution, and in various acts of Assembly, which it would be a work of supererogation particularly to enumerate. Even in its direct, restricted, popular sense, it means he shall have taken an oath or affirmation.

The constitution provides not only that the officer shall be elected, but that he shall be commissioned by the governor. This is conclusive proof that the election alone does not constitute him an officer in a constitutional sense. For there may be cases where the governor would be bound by an imperious sense of duty to withhold the commission from a person duly elected by the qualified electors; as, for example, in cases of insanity developed since the election, or the conviction of some high crime or misdemeanour. Where this occurs, and it is possible, although not probable, no person will venture to contend that the office is filled by election, as the relator contends, so as to create a vacancy by death. It is said, and this is the strength of the relator's case, that the holding over of the incumbent is confined to the single instance of failure to qualify, a failure resulting from the act or omission of the successor. But for this distinction, we see no warrant in the constitution, or in the reason of the thing; for of what consequence is it in principle, whether the officer elect is prevented from qualifying himself by an inability or unwillingness to give the necessary security, by neglect or refusal to take the required oath or affirmation, by insanity or crime, or by the contingency of death? It is enough for the incumbent who holds the office by a constitutional tenure, that for some cause, with which he has nothing to do, the requirements of the constitution and laws have not been complied with.

The only inquiry is, has a successor been duly qualified? if he has not, we are not at liberty to inquire whether it has arisen from his own act or omission, or has been caused by death, or by other causes over which the successor may have had no control. The 10th October, 1848, Brooks was elected to be the respondent's successor, but he never was qualified, and never could be qualified, for he died the 7th of November 1848, within thirty days from the day of his election, and before his commission could be legally issued.

Did the case rest here, the title of the respondent would be clear

and unquestionable; but the relator contends that the facts presented a case of vacancy, which the governor had the right to fill, and this brings us to the consideration of that question. Vacancies of the offices enumerated in the preceding part of this section, so reads the constitution, shall be filled by appointments to be made by the governor, to continue until the next general election, and until successors shall be elected and qualified as aforesaid. To maintain this proposition, that in this case the governor has the right of appointment, as a case of vacancy, it is necessary for the commonwealth to establish that the office, so far as to create a vacancy by death, is filled by election.

On this point several remarks have already been made pertinent to the point, which it would be useless to repeat. That the framers of the constitution did not look to an election merely as conferring office, is very evident, because otherwise we must strike out the important words that before a person who has been regularly elected, commissioned, given bond, and sworn, can be suspended, his successor must be qualified in like manner.

That there is a difference between the election and qualification of the officer, is too apparent to need the aid of argument. The successor must not only be elected, but he must be qualified, are the words of the constitution, showing beyond all question that the election and qualification do not mean one and the same thing.

It will be observed that the terms on which alone the governor can appoint, are a *vacancy in the office,* and that there can be a vacancy in an office when there is a person in possession whom all acknowledge to be rightfully in possession, having a perfect right to exercise all the powers and duties of the office, and to receive and enjoy all its emoluments, is a position difficult to comprehend. It is an abuse of terms to say that at the time the governor issued his commission to the relator the office was vacant, for no person can plausibly deny that the respondent was the rightful possessor of the office, at that time.

The primary object of the framers of the amended constitution (whether wisely or not it would be unbecoming for me to say) was to diminish, as far as practicable, executive patronage; and in accordance with this policy it was thought proper to confine the power of appointment to the single case of a vacancy in office. What, then, is meant by a *vacancy in the office ?* Surely an office cannot be vacant when it is filled by a person in the legitimate exercise of all its functions, in the lawful enjoyment of all its emoluments.

It would be a waste of time to enter into an elaborate argument to prove a proposition so plain. But disguise it as you may, this is the case here.

At the time the governor issued his commission to the relator, the present incumbent, beyond all controversy, was the legal officer of the court. His time had not expired, nor could he be replaced except by a person fulfilling all the constitutional and legal requirements. The relator's proposition involves the legal absurdity that two persons can be the lawful officer of the same office at one and the same time. In this case we have to choose between the elect of the people and the appointee of the governor, and we think we cannot assail the intention of the constitution by inclining to the former rather than the latter. The respondent was elected by the people, and we see nothing by which his title to the office has been affected or impaired.

Judgment for defendant.

---

## MEMORANDUM.

GIBSON, C. J., was at Nisi Prius, December 26th, January 2d to 5th, and absent from sickness December 19th to 21st, and 27th to January 2d.

BURNSIDE, J., was at Nisi Prius December 11th to 21st.

COULTER, J., was at Nisi Prius January 17th to 22d.

BELL, J., was absent December 15th, 16th, and January 3d.