## Staunton

### H. P. Burnett v. James H. Brown and Hon. John S. Draper, Judge of the Circuit Court of Grayson County, Virginia.

September 10, 1952.

Present, All the Justices.

*J. L. Dillow, H. E. Widener* and *George M. Warren,* for the petitioner.

*Campbell & Campbell,* for the respondents.

Smith, J., delivered the opinion of the court.

This is an original proceeding in this court whereby the petitioner, H. P. Burnett, makes application for a writ of mandamus to be directed to the respondents commanding and compelling them to restore and admit the said petitioner to the office of attorney for the Commonwealth of Grayson county.

The respondents have conceded at the bar of this court that mandamus is a proper remedy to try title to the office herein involved.

The following question is presented for decision: The duly elected attorney for the Commonwealth of Grayson county having died prior to January 1, 1952, the beginning of his term of office, and before he had qualified, did the Circuit Court of Grayson county have the authority to declare the office vacant on January 1, 1952, and make an appointment for the full term ending December 31, 1955?

We are of the opinion that the question should be answered in the affirmative.

The petitioner was elected attorney for the Commonwealth of Grayson county on November 4, 1947. He thereafter qualified and entered upon the discharge of the official duties of his office, but he was not a candidate in the election of November 6, 1951. The two candidates for the office at that time were E. Sam Burnett, Jr., nephew of the petitioner, and James H. Brown, one of the respondents in this proceeding. E. Sam Burnett, Jr., received a majority of the votes in this election and was duly declared elected, but he died on November 21, 1951, as the result of a tragic hunting accident, before he had qualified for office.

On January 1, 1952, the circuit court, by an order properly entered, declared a vacancy in the office of the attorney for the Commonwealth of Grayson county and appointed the respondent, James H. Brown, to that office for the four-year term commencing January 1, 1952. Later on that same day, Brown qualified by taking the prescribed oath of office and he has since occupied and performed the duties of that office.

The petitioner contends that the circuit court's order of January 1, 1952, is void, because E. Sam Burnett, Jr., had no term of office, since he died before he had qualified. It follows, says the petitioner, that there was no vacancy for the circuit court to fill, consequently the petitioner prays that he be restored to the office of attorney for the Commonwealth of Grayson county on the ground that as the incumbent of that office for the term ending December 31, 1951, he was automatically entitled to hold over for the ensuing four-year term commencing January 1, 1952.

Attorneys for the Commonwealth are constitutional officers. Section 110, Art. VII, of the Constitution states that "There shall be elected by the qualified voters of each county * * *, an attorney for the Commonwealth, * * *." The term of office is fixed by section 112, Art. VII, of the Constitution which provides that "* * * such officers shall enter upon the duties of their offices on the first day of January next succeeding their election, and shall hold their respective offices for the term of four years, * * *." It is further provided, by section 33, Art. II, of the Constitution that "* * * All officers elected or appointed, shall continue to discharge the duties of their offices after their terms of service have expired until their successors have qualified."

The possibility of a vacancy was foreseen and provided for by section 56, Art. IV, of the Constitution, which confides to the General Assembly the manner "* * * of filling vacancies in office, in cases not specially provided for by this Constitution, * * * and the General Assembly may declare the cases in which any office shall be deemed vacant where no provision is made for that purpose in this Constitution."

The General Assembly has provided in Code section 15-475 that "Every county and district officer elected by the people, * * * unless otherwise provided by law, * * * shall, on or before the day on which his term of office begins, qualify by taking the oath prescribed by § 49-1 and give the bond, if any, required by law, * * *." Code section 15-477 states that "If any such officer *fail to qualify* and give bond, as required by the preceding section, on or before the day on which his term begins, *his office shall be deemed vacant;* * * *."

Pursuant to the constitutional authority above noted, the General Assembly has also provided in Code section 24-145 that "When a vacancy occurs in any county * * * office, and no other provision is made for filling the same, it shall be filled by the circuit court of the county * * * in which it occurs, or the judge thereof in vacation; * * *."

Code section 24-145, above referred to, was first enacted by the Acts of 1874-75, chap. 153, p. 133. In 1938, a new provision, section 24-147.1, was added to the Code. While we are not herein directly concerned with this new section, it does give some indication of the legislative interpretation of Code section 24-145

with which we are vitally concerned. Code section 24-147.1 provides that ''When any person elected at a regular election as a member of the board of supervisors or other governing body of any county shall die, resign or be legally incapacitated to hold such office, *prior to qualifying as such officer,* then the judge of the circuit court of the county shall, *in lieu of appointing a successor* for the term for which such person did not qualify, issue a writ of election as provided in § 24-139 to fill such vacancy. * * * '',

It is to be noted that Code section 24-147.1 takes away from the court or the judge the authority to appoint a member of the board of supervisors or other governing body of the county when the vacancy has been occasioned by the death, resignation or legal incapacity to hold office prior to qualifying as such. The language of Code section 24-147.1 is a strong indication that the General Assembly recognized that except for its enactment, the court or judge thereof in vacation would be charged with the responsibility for the appointment of a successor in a case like that now before us.

This analysis of the constitutional and statutory law gives great weight to the contention of the respondents that the failure of the attorney for the Commonwealth-elect to qualify for his office by reason of his death, either on or before the date on which his term of office would have begun, created a vacancy in that office and authorized the circuit court to appoint a successor.

To buttress our analysis of the constitutional and statutory law governing this case we now turn to an examination of the decided cases on this subject. In *Johnson* v. *Mann,* 77 Va. 265, decided in 1883, a question arose in the city of Petersburg over the right of a treasurer to hold office. Johnson was the retiring treasurer, a situation comparable to that of the petitioner in the case at bar. Couch was elected to succeed Johnson, but Couch failed to qualify before the beginning of the first day of his term of office as he was required to do. Johnson there contended, just as the petitioner does here, that there was no vacancy in the office of treasurer and that he, Johnson, was entitled to hold the office of treasurer for the succeeding term of three years. However, the court held that the elected officer's failure to qualify before the commencement of his term created

a vacancy in the office which this hustings court was authorized to fill and that the incumbent was not entitled to hold over until the next election but only until his successor had been appointed and had qualified. This conclusion was based on a construction of the Constitution of 1870. We quote from the opinion in the *Johnson Case*, 77 Va., at page 271, as follows:

"The provision of the constitution mainly, if not solely, relied on by counsel for the petitioner, is the twenty-fifth section of the sixth article [which is substantially the same as section 33 of the Constitution of 1902 hereinbefore referred to]. It simply provides for the holding over by the incumbent after the expiration of his term, until his successor shall qualify. The plain unequivocal import of this section of the constitution is, that when the regular term expires, the office becomes, in the eye of the constitution, vacant, but with authority to the incumbent, already qualified, to continue by virtue of such previous qualification, made effective for the purpose by the constitution, to discharge the functions of the office until he is succeeded in the way preferred by the people, as pointed out in the constitution made by them, and in the laws made in pursuance of that instrument. The petitioner filled out his regular term; and under the constitutional provision being considered is, to prevent the evils which would flow from either an accidental or designed failure to qualify on the part of the person elected to succeed him, enabled to go on in the discharge of the duties appertaining to the office, not his office, so far into the succeeding regular term, as the time when his successor, legally selected, shall be fully equipped as an officer to take charge of the office and perform its functions."

At the risk of being repetitious, it must here be noted again that the Virginia Constitution, § 112, in fixing the term of office does not say either expressly or impliedly that an attorney for the Commonwealth shall hold his office for a period of four years "and until his successor qualifies." To the contrary, it proclaims that he shall enter upon the duties of his office on the first day of January next succeeding his election and that he shall hold his office for a term of four years. In order to prevent a hiatus it is provided in § 33, in the public interest, that all officers "shall continue to discharge the duties of their offices after

their terms of service have expired until their successors have qualified.''

The law in Virginia, as set forth in the *Johnson Case*, would clearly support the right of the circuit court to make the appointment in the situation now before us and would control were it not for certain language in the later decision of *Chadduck* v. *Burke,* 103 Va. 694, 49 S. E. 976. There it is said, 103 Va., at page 699, that:

''The case of *Johnson* v. *Mann,* 77 Va. 265, is cited for the proposition that a vacancy exists which can be supplied by the appointing power for filling vacancies, when the incumbent of an office is holding over, by authority of law, until his successor qualified. In that case Judge Richardson does employ language justifying this contention; but its use does not appear to have been necessary to the decision of the question there involved, and the *dictum* is not sound, is contrary to the current of authority, and cannot be followed as a precedent.''

The facts of the *Johnson Case* justified the use of the language employed and what was said there was not *dictum*. There was before the court a question demanding a construction of the Constitution upon which the decision depended. We shall hereafter deal with the question of whether it was sound.

The *Chadduck Case* arose under our 1902 Constitution and dealt with sections 11 and 17 of the Schedule to the Constitution, which were adopted to provide for the change-over from the old to the new Constitution.

Chadduck had been superintendent of the poor for several terms immediately preceding the litigation. Under the old Constitution his term of office began on the 1st day of July and ended on the 30th day of June, four years thereafter, and his last term under the old Constitution ended on June 30, 1903. Under the new Constitution the term of his office was changed and made to begin on the 1st day of January instead of the 1st day of July.

Section 11 of the Schedule extended the term from June 30, 1903, to January 1, 1904. Section 17 of the Schedule provided that each officer whose term was extended by the Schedule should give bond for the faithful discharge of his duties for the extended term and ''until his successor shall have been duly chosen, and shall have qualified according to law.'' Chadduck

executed the required bond and his regular term was extended to January 1, 1904, and until his successor had been duly chosen and had qualified according to law.

The law in effect on January 1, 1904, authorized the county judge, upon the recommendation of the board of supervisors, to appoint a new superintendent of the poor at any time between the date of the act and January 1, 1904. On January 11, 1904, the judge disregarded the recommendation of the board of supervisors and undertook to appoint Chadduck to the office for a four-year term. This appointment was void, because the judge failed to comply with the provisions of the act which authorized the appointment upon the recommendation of the board.

On April 19, 1904, the circuit court (which had superseded the county court) upon the recommendation of the board of supervisors entered an order appointing Burke as superintendent of the poor. The statute in effect on that date directed the circuit court to appoint a superintendent of the poor in November, 1907, for the four-year term beginning January 1, 1908, and it further empowered the court to fill vacancies that might thereafter occur in the office.

This court held that there was no vacancy on April 19, 1904, and that the order naming Burke was void and Chadduck was continued in office by virtue of the provisions of section 17 of the Schedule. It is to be noted that the language of the Schedule with which the court was concerned in the *Chadduck Case* was different from that of section 33 of the Constitution which controls this case now before us.

The petitioner bases his claim to the office of attorney for the Commonwealth of Grayson county squarely on the rule of the *Chadduck Case,* which case it is contended is approved by certain language in *Frantz* v. *Davis,* 144 Va. 320, 131 S. E. 784; *Owen* v. *Reynolds,* 172 Va. 304, 1 S. E. (2d) 316; and *Fleming* v. *Anderson,* 187 Va. 788, 48 S. E. (2d) 269. Let us turn to those cases and examine the language used therein with reference to the *Chadduck Case.*

*Frantz* v. *Davis, supra,* was a contest between Frantz, the appointee to the treasurer's office, and Davis, the incumbent. Frantz had been elected to the office, but his election was held to be void. Later, Frantz was appointed by the city council pursuant to a charter provision. Davis contended that there

was no vacancy and that by virtue of section 33 of the Constitution and the decision in the *Chadduck Case* he was entitled to hold the office until it could be filled by a regular election.

The majority of the court held that the decision was governed by Code section 267 (section 24-438 of the 1950 Code) and that *Chadduck* v. *Burke* did not control. Judge Burks dissented on the ground that the case was ruled by the *Chadduck Case*. However, the majority opinion quoted from the *Chadduck Case*, 144 Va., at page 324, to the effect that an office " '* * * cannot become vacant at the end of a term where the incumbent is authorized to hold over, * * *' " and it was said that "This construction has been quite generally approved." The majority opinion also used this language, 144 Va., at page 325, "Upon this [the construction of the *Chadduck Case*] the respondent, Davis, bases his claim to hold the office, notwithstanding the expiration of the term for which he was elected. If this were all, our task would be simple, and we should be bound to hold that Davis is entitled to the office. This case, however, required the construction of different statutes from those which were construed in *Chadduck* v. *Burke, supra.*" Since the *Frantz Case* was decided squarely on section 267 of the Code, the quoted portions were unnecessary to the decision of the case and are not binding on us.

*Owen* v. *Reynolds, supra,* involved the appointment of a school trustee under a statute which provided that "Any vacancy in the county school board shall be filled by appointment by the trustee electoral board." The trustee electoral board had been regularly appointed and had served for a four-year term which ended on August 1, 1930. On July 24, 1930, they were re-appointed for another four-year term. None of the board members qualified under this re-appointment, although they continued to discharge the duties of their office until January 10, 1938, at which time the judge of the circuit court, in vacation, appointed a new board for the unexpired term ending August 1, 1938, and these appointees duly qualified.

On December 2, 1937, the old board named Owen to fill a vacancy on the school board caused by the death of a member. Subsequently, Reynolds was elected by the new board to fill the office to which Owen had been elected by the old board. The statute law provided that "The present trustee electoral board

and county school boards now in office, shall continue to hold office until their sucessors have been elected and qualified."

It was held that the old board continued to hold office until their successors had been elected and had qualified and that the old board was authorized to elect a member of the school board and that Owen was regularly elected.

However, this language is used in the *Owen Case,* 172 Va., at page 308: "The period between the expiration of an incumbent's term and the qualification of his successor is a part of the term itself. *Chadduck* v. *Burke,* 103 Va. 694, 49 S. E. 976." This we understand to be true because of the express language of the statute fixing the terms of trustee electoral boards and it was also true in the *Chadduck Case* because of the language of section 17 of the Schedule to the Constitution.

*Fleming* v. *Anderson, supra,* (which involved two cases) were actions at law by a former treasurer and a former sheriff against the officers elected to succeed them to those offices, who had been removed from office for fraud in their election after they had served in office about two years. The basis of the actions was that the prior incumbents had been reinstated as *de jure* officers and were entitled under section 33 of the Constitution to discharge the duties of their offices and, therefore, were entitled to the salaries and emoluments of office during the time the defendants held the offices under color of title.

The purpose and object for which section 33 of the Constitution was enacted was discussed as follows, 187 Va., at page 800:

"As is said in 43 Am. Jur., Public Officers, section 164, p. 21, 'The purpose of provisions authorizing public officers to hold over is to prevent a hiatus in the government pending the time when a successor may be chosen and inducted into office.'

" 'The extension is for the public benefit, and not to confer on the incumbent the right to continue.' *Wardwell* v. *Leggat,* 291 Mass. 428, 197 N. E. 164, 165.

"The right to hold over is a contingent right designed to meet a public necessity. It becomes operative only when the necessity arises—that is, when there is no one with the present better right to occupy the office."

The *Chadduck* and *Frantz Cases* were discussed in the *Fleming Case* without express approval or disapproval of the doctrine of the *Chadduck Case*. The *Fleming Case* is authority only

for the proposition that under the facts of that case the incumbents did not hold over beyond their term.

We will briefly examine some of the authorities cited by the petitioner upholding what is described as the majority view in order to determine the language of the constitutions or statutes under consideration.

In addition to the *Chadduck Case* the petitioner relies on *Branham* v. *Long,* 78 Va. 352; *Pittman* v. *Ingram,* 184 Ga. 255, 190 S. E. 794; *Kimberlin* v. *State,* 130 Ind. 120, 29 N. E. 773, 14 L. R. A. 858, 30 Am. St. Rep. 208; *People* v. *Lord,* 9 Mich. 227; *State* v. *Metcalfe,* 80 Ohio St. 244, 88 N. E. 738; *Commonwealth* v. *Lomas,* 302 Pa. 97, 153 A. 124, 74 A. L. R. 481; *Commonwealth* v. *Sheatz,* 228 Pa. 301, 77 A. 547, 50 L. R. A. (N.S.) 374, 21 Ann. Cas. 54; and *Commonwealth* v. *Hanley,* 9 Pa. 513.

Beginning with the *Chadduck Case* each and every case cited by the petitioner is based on constitutional or statutory language fixing a definite term "and until his successor shall be elected and qualified" or similar language. The *Chadduck Case,* as already pointed out, dealt with the provision in section 17 of the Schedule to the Constitution which provided for "* * * the extended term herein provided for, and until his successor shall have been duly chosen, and shall have qualified according to law." The statute under consideration in *Branham* v. *Long, supra,* was for a two-year term of office and "until his successor shall be elected and qualified." In *Commonwealth* v. *Hanley, supra,* the term of office was fixed at three years "and until their successors shall be duly qualified." This case was reviewed in the *Johnson Case* and the distinction between the Pennsylvania Constitution and the Virginia Constitution was made clear. The *Kimberlin Case* (the case most frequently cited for the so-called majority view) was based on the *Hanley Case* and was decided under the Indiana Constitution which provided that "such officer shall hold his office for such term, and until his successor shall have been elected and qualified."

In all of these cases the term of office was fixed at a definite period plus an indefinite period—until his successor shall have been legally selected and qualified. This language is quite dissimilar to the provision of our Constitution which fixes the term of attorneys for the Commonwealth at four years with the added provision that they continue to discharge the duties of

their offices after their terms have expired until their successors have qualified. The cases cited by the petitioner are thus easily distinguished.

In a note to *Commonwealth* v. *Lomas, supra,* found in 74 A. L. R., at page 486, it is stated that in a majority of jurisdictions the rule obtains that the death or disability of an officer-elect, before qualifying, does not create a vacancy in the office which the appointing power may fill, since the officer-elect never occupied the office; and where it is provided that the incumbent shall hold his office until his successor is elected and qualified, the prior incumbent is entitled to continue in the office until his successor has been duly elected and has qualified. However, this rule is expressly made to depend upon the provision that an incumbent shall hold his office until his successor is elected or appointed and qualified. The note shows that whether the death of an officer-elect, before qualification or entry upon his duties, creates a vacancy is a problem which depends for its solution on the constitutional and statutory provisions of each jurisdiction.

A typical illustration of the necessity for carefully following the mandates of applicable constitutional and statutory provisions in the case of *Commonwealth* v. *Sheatz, supra,* which affirmed the doctrine of the *Hanley Case,* but held that where a treasurer died without qualifying before his term of office began, there was a vacancy in the office which must be filled by appointment, because a constitutional provision stated that a treasurer could not succeed himself.

The petitioner insists that there is no real legal distinction between the language used in our Constitution and the constitutions and statutes of other States and in support of this proposition he cites the *Chadduck Case.* However, the *Johnson Case, Kilpatrick* v. *Smith,* 77 Va. 347, *Owen* v. *Reynolds, supra,* and *Commonwealth* v. *Sheatz, supra,* make such distinction clear. In 1883 the *Kilpatrick Case* had this to say on that subject, 77 Va., at page 359:

"In support of the claim that no vacancies existed which could be supplied by the board of education, the appellees rely upon the cases of *Commonwealth* v. *Hanley,* 9 Pa. 513; *State* v. *Lusk,* 48 Mo. 242; and *People* v. *Tilton,* 37 Cal. 614; and like cases, none of which have any application to cases arising under our constitution and statutes. They all turn upon language

which expressly extends the term of office by the words, '*and until his successor shall duly qualify*'; or, '*and until his successor shall be elected and qualified.*'

"The clause in question, in our constitution, does not extend the term, but simply enables the incumbent to hold over until his successor, whether elected or appointed, is chosen in the way prescribed by law."

Judge Holt in *Owen* v. *Reynolds, supra,* points out the difference in phraseology between "merely continuing to discharge the duty" and "extending the term of office until the qualification of a successor" in this language, 172 Va., at page 308:

"The trustee electoral board and its members are not merely authorized to continue to discharge the duties of their office but by the very language of the statute which gives this board being continue to hold office until their successors have been appointed and qualified; moreover, section 33 of our Constitution declares that 'all officers, elected or appointed, shall continue to discharge the duties of their offices after their terms of service have expired until their successors have qualified.' Plainly under legislative mandate, the members remain in office, and under constitutional mandate, they are not merely empowered but are directed to discharge its duties after their terms of service have expired and until their successors have qualified."

Another instructive case is that of *State* v. *Murphy,* 32 Fla. 138, 13 So. 705. The opinion contains an exhaustive review of the cases decided by the various courts and points out that each of them depends upon the language of the particular constitution or statute under consideration and adverts to the further fact that some decisions are influenced by a supposed policy against appointments. The same opinion also points out the significance of the language of the Constitution for a holding over, "after the expiration of their official terms." This language is similar to that of section 33 of the Virginia Constitution, relied upon by the petitioner as extending his term of office for four years. In this connection the Florida court said, 32 Fla., at page 160:

"The use of the words, 'after the expiration of their official term,' is a recognition of a distinction in the nature of the tenure during that time and the subsequent time. The language implies and means that his regular or permanent tenure has expired, and that it is now both temporary and a part of another term.

It is different from that used in the Pennsylvania and other cases cited *supra,* where he is to hold *his office* or *their offices* for a stated time and until his successor or their successors shall be qualified, or duly qualified, or elected and duly qualified.''

In the light of the foregoing, we find no difficulty in concluding that the decision in *Johnson* v. *Mann* is sound and that it correctly construed the applicable provisions of our Constitution and statutes.

We do not feel that it is necessary to discuss or distinguish all the cases from other jurisdictions which deal with the question which is before us for decision. What has been said is sufficient to point out the law of this State as set forth in our Constitution and statutes. Code section 15-475 provides that every county officer elected by the people shall, unless otherwise provided by law, qualify for office on or before the day on which his term begins and Code section 15-477 provides that if any such officer fails to qualify according to law, his office shall be deemed vacant. The Code provisions are authorized by section 56, Art. IV, of the Constitution. The younger Burnett was a county officer elected by the people within the provisions of Code section 15-475. He failed to qualify on or before the day his term of office would have begun. The law makes no exceptions or distinctions, but in the plainest language provides that if there is not a qualification, there is a vacancy. It is conceded that if there is a vacancy, the method of filling the office by appointment under Code section 24-145 is correct.

Accordingly, the prayer of the petition for a writ of mandamus is denied.

*Writ refused.*