COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Felton, Judges Alston and McCullough
Argued at Alexandria, Virginia

UNPUBLISHED

CARLETTA TALAYA CARTER STEWART

MEMORANDUM OPINION[*] BY
v.      Record No. 2453-11-4        JUDGE STEPHEN R. McCULLOUGH
                                    OCTOBER 16, 2012

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Jane M. Roush, Judge

William D. Pickett for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


Carletta Talaya Carter Stewart assigns error to the trial court's *sua sponte* review of the

presentence report of a defendant in a related case, asserting that such review by the court was

improper. We find no violation of Code § 19.2-299 or Judicial Canon 3B(7), the two grounds

asserted for reversal, and we, therefore, affirm the judgment of the trial court.

BACKGROUND

Carter Stewart held the position of Chief Financial Officer for the American Board of

Opticianry. At some point, Carter Stewart became romantically involved with Hugh Michael

Robey, the Chief Executive Officer of the organization. According to the Commonwealth's proffer

of the evidence, Carter Stewart embezzled over $1.2 million from her employer. The embezzled

funds paid for jewelry, shopping, and travel, among other things. Robey also embezzled money

from the Board and, according to Carter Stewart, his activity predated her own embezzlement.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

After the illegal activity was discovered, Carter Stewart ultimately pled guilty to three charges of embezzlement. Robey also pled guilty to four charges of embezzlement. Robey was sentenced to serve ten years in prison with nine years suspended on each of the four counts of embezzlement. The court in Robey's case ordered his sentences to be served concurrently.

In a memorandum she filed before the sentencing hearing, Carter Stewart portrayed herself as being enticed by Robey into embezzling. She also highlighted the sentence Robey had received and argued that "[s]trong public policy considerations warrant against imposing disproportionate sentences on codefendants who have been found guilty of similar conduct."

At the sentencing hearing, the court noted that it had reviewed Robey's presentence report to determine Carter Stewart's degree of culpability. The court sentenced Carter Stewart to serve 10 years on each charge, none of it suspended, with the sentences on each charge to run concurrently.

Carter Stewart later filed a motion to set aside her sentence. Invoking Virginia Judicial Canon 3B(7), which forbids judges from engaging in certain *ex parte* communications, and Code § 19.2-299, which governs presentence reports, Carter Stewart argued that the court's consideration of Robey's presentence report was improper.

The court responded to the motion in a letter to the parties. The court explained that it had read Robey's presentence report in response to Carter Stewart's argument that she should not receive a greater sentence than Robey and the contention in her sentencing memorandum that "[a]ccomplices who commit the same offense should not receive disparate sentences unless there is a disparity in conduct or other circumstances." The court stated that the only fact it "gleaned from Mr. Robey's presentence investigation that in any way affected the sentence of Ms. Carter-Stewart was she, unlike Mr. Robey, had a prior criminal record." The court further noted that if counsel wished to have a hearing on the issue, the court would schedule one "right away." Carter Stewart did not request a hearing.

ANALYSIS

The issue before us is one of law, namely, whether the trial court acted outside the bounds of Virginia Judicial Canon 3B(7) and Code § 19.2-299.[1] The construction of rules and statutes is a matter that we review *de novo* on appeal. Belew v. Commonwealth, 284 Va. 173, 177, 726 S.E.2d 257, 259 (2012).

Carter Stewart relies on Code § 19.2-299, noting that this statute establishes the confidentiality of presentence reports. The same code section further provides, however, that "such reports or copies thereof shall be available at any time to any criminal justice agency, as defined in § 9.1-101." Code § 9.1-101 includes the courts in its definition of a "criminal justice agency." The statute does not limit courts to a review of presentence reports in particular cases. Therefore, the court plainly did not transgress Code § 19.2-299 when it consulted Robey's presentence report.[2]

---

[1] Carter Stewart also mentions in passing a due process right to confront the probation officer who prepared Robey's presentence report. She had notice that the court had consulted Robey's presentence report. In addition, the court afforded her the opportunity for a hearing. She did not avail herself of that opportunity. Therefore, she forfeited any due process claim. See, e.g., Giglio v. Dunn, 732 F.2d 1133, 1135 (2d Cir. 1984) (a litigant "was not deprived of due process simply because he failed to avail himself of the opportunity" to challenge the action complained of). See also Bell v. Lynaugh, 828 F.2d 1085, 1094 (5th Cir. 1987); People v. Laue, 130 Cal. App. 3d 1055, 1061 (Cal. Ct. App. 1982); People v. DeLuca, 706 N.E.2d 927, 929 (Ill. Ct. App. 1998).

[2] We note that there is some tension between Code § 19.2-299, which provides, without limitation, that presentence reports are available to courts, and case law limiting the ability of a court to take judicial notice of records in cases other than the case before the court. See Bernau v. Nealon, 219 Va. 1039, 1043, 254 S.E.2d 82, 85 (1979) ("[T]he court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties and in the same court, unless the proceedings are put in evidence." (citing Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 510 n.38 (4th Cir. 1977))). See also Fleming v. Anderson, 187 Va. 788, 794, 48 S.E.2d 269, 272 (1948) (noting that ordinarily, a trial court "will not take judicial notice of its records, judgments and orders in other and different cases or proceedings, even though such cases or proceedings may be between the same parties and in relation to the same subject matter"). We need not address the point here because the issue of judicial notice was not raised at trial or on appeal. We limit our holding to the grounds raised at trial and on appeal.

Carter Stewart also invokes Judicial Canon 3B(7), which provides in pertinent part that "[a] judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding." A report that is included in the records of the court does not represent an *ex parte* communication within the intendment of the rule. In addition, Canon 3B(7) expressly allows a court to consider *ex parte* communications if such communications are "expressly authorized by law." Canon 3B(7)(e). As noted above, Code § 19.2-299 expressly provides that presentence reports are available to courts. In short, we find no basis to remand for a new sentencing hearing based on this judicial canon.[3]

Finally, Carter Stewart relies on Craddock v. Commonwealth, 16 Va. App. 402, 429 S.E.2d 889 (1993). In that case, this Court reversed and remanded for a new sentencing hearing before a different judge because of statements made by the prosecutor during the sentencing hearing. The prosecutor stated that the defendant had rejected an offer of a ten-year sentence and even taunted the prosecutor about his "ridiculous offer." Id. at 404, 429 S.E.2d at 891. Such evidence was improper, this Court noted, and its consideration by the trial court was not harmless. In this instance, Carter Stewart has not supplied this Court with any basis upon which to conclude that the trial court's consideration of Robey's presentence report was improper. Therefore, Craddock is inapplicable.

CONCLUSION

Finding no error on the grounds asserted, we affirm the judgment of the trial court.

Affirmed.

---

[3] It is not clear to what extent the judicial canons, by themselves, afford a basis for reversal of a conviction in the event a judge has transgressed them. The canons are designed to establish "standards for ethical conduct of judges." See Preamble, Canons of Judicial Conduct for the State of Virginia. In light of our holding, we need not explore that question. See also Wilson v. Commonwealth, 272 Va. 19, 28, 630 S.E.2d 326, 331 (2006) (judicial canons are instructive but not determinative in addressing recusal motion).

- 4 -